STATE OF NORTH CAROLINA v. BERNICE HUGH McDOUGALD

No. 28A93

(Filed 17 June 1994)

**1. Evidence and Witnesses § 541 (NCI4th) — first-degree murder — escape — evidence of flight — admissible — probative value not outweighed by danger of prejudice**

The trial court did not err in a first-degree murder prosecution by allowing the State to introduce evidence of defendant's escape from the Hoke County Jail. It is well settled that an escape from custody constitutes evidence of flight and evidence of flight is admissible as evidence tending to show the defendant's guilt. The probative value of the evidence is not outweighed by the danger of unfair prejudice because "unfair prejudice" contemplates evidence having an undue tendency to suggest decision on an improper basis. The evidence of defendant's escape could only be viewed as having a due tendency to suggest a decision on a proper basis.

**Am Jur 2d, Homicide §§ 245 et seq., 578 et seq.**

STATE v. McDOUGALD

[336 N.C. 451 (1994)]

2. **Evidence and Witnesses § 162 (NCI4th) — first-degree murder — threats by defendant during escape from jail — admissible**

The trial court did not err in a first-degree murder prosecution by admitting evidence of threats defendant made during an escape from jail. The threats made by defendant during the course of his escape therefore were relevant to show the entire context of defendant's escape and the strength of his desire to escape. In light of this, evidence tending to show the entire context of defendant's escape could only be viewed as having a due tendency to suggest a decision on a proper basis and defendant was not unfairly prejudiced.

**Am Jur 2d, Homicide §§ 245 et seq., 578 et seq.**

3. **Evidence and Witnesses § 1064 (NCI4th) — first-degree murder — flight — instructions — no plain error**

There was no plain error in a first-degree murder prosecution in the trial court's instruction on flight where, except for that portion of the instruction informing the jury that "an escape from custody constitutes evidence of flight," the instruction is identical to the appropriate pattern jury instruction and that additional portion is a correct statement of the law. Flight is not an element of any of the offenses with which defendant was charged and the instruction thus could not have relieved the State of its burden of proving every element of the offenses.

**Am Jur 2d, Evidence §§ 623 et seq.**

**Admissibility of evidence that defendant escaped or attempted to escape while being detained for offense in addition to that or those presently being prosecuted. 3 ALR4th 1085.**

4. **Criminal Law § 736 (NCI4th) — first-degree murder — flight — instructions — repetition**

There was no plain error in a prosecution for first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and discharging a firearm into occupied property where the court repeated its instruction on flight once for each of the three offenses. The instruction comported with the appropriate pattern jury instruction on flight and well-settled law with regard to such evidence; mere repetition of an otherwise proper instruction does not constitute error.

**Am Jur 2d, Trial §§ 1164 et seq., 1242 et seq.**

STATE v. McDOUGALD

[336 N.C. 451 (1994)]

5. **Criminal Law § 793 (NCI4th) — assault instructions — acting in concert — no error**

The trial court did not err in an assault prosecution in its instructions on acting in concert where defendant contended that the court's repeated use of the phrase "the defendant or another or other acting in concert with the defendant" permitted the jury to find defendant guilty if the jury believed that the crime was committed by someone other than the defendant even if that person had no connection to defendant. The court merely explained to the jury that it could convict defendant if he acted, alone or with one or more persons, to commit the crime and he intended that the crime be committed.

**Am Jur 2d, Trial §§ 1164 et seq., 1242 et seq.**

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment entered by Gore, J., on 6 October 1992, in the Superior Court, Scotland County, sentencing the defendant to life imprisonment for first-degree murder. The defendant's motion to bypass the Court of Appeals as to additional judgments was allowed by the Supreme Court on 2 September 1993. Heard in the Supreme Court on 17 March 1994.

*Michael F. Easley, Attorney General, by Thomas S. Hicks, Assistant Attorney General, for the State.*

*John Bryson for the defendant-appellant.*

MITCHELL, Justice.

On 6 July 1992, the Hoke County Grand Jury indicted the defendant, Bernice Hugh McDougald, for first-degree murder, conspiracy to commit first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury and discharging a firearm into occupied property. Upon the defendant's motion, venue was changed to Scotland County. The defendant was tried capitally at the 24 September 1992 Criminal Session of Superior Court, Scotland County. The jury returned verdicts finding the defendant guilty of premeditated and deliberate first-degree murder and all of the other charges against him.

At the conclusion of a separate capital sentencing proceeding conducted pursuant to N.C.G.S. § 15A-2000, the jury recommended

STATE v. McDOUGALD

[336 N.C. 451 (1994)]

a sentence of life imprisonment for the first-degree murder conviction. The trial court sentenced the defendant in accord with the jury's recommendation. The trial court also sentenced the defendant to imprisonment for thirty years for conspiracy to commit first-degree murder, imprisonment for twenty years for assault with a deadly weapon with intent to kill inflicting serious injury and imprisonment for ten years for discharging a firearm into occupied property. Under the judgments entered by the trial court, these latter three sentences are to be served consecutive to each other and to the life sentence imposed for the first-degree murder conviction. The defendant appealed to this Court as a matter of right from the judgment sentencing him to life imprisonment for first-degree murder. See N.C.G.S. § 7A-27(a) (1989). We allowed his motion to bypass the Court of Appeals on his appeal from the additional judgments.

The State's evidence tended to show the following. Shortly after 7:00 p.m. on 4 April 1991, members of the Southern Pines Police Department, including the victim, Detective Ed Harris, investigated a report of gunshots at the Holiday Town Apartments in Southern Pines, North Carolina. As Harris and the other officers were searching the area for weapons and illicit drugs, a heated verbal exchange took place between Detective Harris and the defendant. Detective Harris told the defendant that he "better have hidden the dope good" because Harris would be returning with a search warrant.

After the officers left the apartment complex, the defendant met with seven other people, including Kerry Morston and Shannon McKenzie. The defendant told the group that Detective Harris was "f---ing up our business" and that it was "time to get rid of" Harris. At the time the defendant made these statements, three members of the group, including Morston, were armed. Two of the group members held 30-30 rifles, while Morston was armed with a 9-millimeter pistol. The defendant subsequently procured his own 30-30 rifle.

Once the defendant had armed himself, he told Shannon McKenzie that McKenzie was to knock on the front door of Harris' home. The defendant instructed Morston that when Harris answered the door, Morston was to "shoot the hell out of him." The defendant further stated that he would stand over Harris and shoot Harris himself once Harris had been felled by Morston.

STATE v. McDOUGALD

[336 N.C. 451 (1994)]

The group traveled by car to the Harris residence located just outside of Southern Pines, arriving around 10:00 p.m. They drove a short distance beyond the house and stopped. The defendant told the driver, John Chisolm, to drive around and return in thirty minutes. The other seven members of the group, including the defendant, then walked to Detective Harris' home where they gathered near a shelter in the yard. As they were waiting near the shelter, a car pulled up and Harris' son, Anthony, got out of the car and went inside the house.

After the car drove away, Shannon McKenzie and Kerry Morston walked to the front door of the Harris residence at the defendant's direction. McKenzie rang the doorbell and ran. Harris was sitting in his den with his wife, Judy, when the doorbell rang. Harris got up and opened the door leading from the den into a utility room. At the opposite end of the utility room was the front door to the house. Detective Harris closed the door leading into the den, turned on the front porch light and opened the front door. Morston then shot Harris three or four times through the screen and glass storm door. McKenzie testified at trial that he also heard another shot coming from the direction of the shelter where the defendant was standing.

After hearing the shots, Judy and Anthony Harris ran into the utility room and found Detective Harris lying in a pool of blood and glass. Mrs. Harris pulled Detective Harris' patrol car around to the front of the house and Anthony placed Detective Harris in the backseat of the car. On their way to the hospital, Anthony attempted in vain to revive his father.

In the meantime, Kerry Morston and Shannon McKenzie fled on foot toward the highway, where they found Chisolm and the getaway car. Once in the car, Morston exclaimed, "I got him, I got him." Morston and McKenzie subsequently got out of the car and continued fleeing on foot. They eventually came upon the defendant, who was with two other members of the group. The defendant told them that he also had fired at Detective Harris. After some additional discussion, the five men decided to walk to the mobile home of one Anna Hurd. Once there, the defendant wiped down the weapons and hid them under a bed. Hurd later drove the men back to Southern Pines.

A subsequent autopsy revealed that Detective Harris had suffered fatal gunshot wounds to the face, wrist, chest, back and

abdomen. Bullets or parts of bullets had also traveled through the door leading into the den of the Harris home and one of these bullets had severed one of Judy Harris' fingers. Mrs. Harris' finger was surgically reattached on the night of the murder.

The defendant was arrested in connection with Detective Harris' murder on 5 April 1991 and placed in the Hoke County Jail. He shared a cell with Terry Evans, another member of the group of eight that had conspired to murder Detective Harris. On 19 August 1991, Ms. Glenda Blue, a jailer at the Hoke County Jail, received a call that the defendant's cell was flooded. Responding to the report, Ms. Blue carried a mop to the defendant's cell. When she later returned to retrieve the mop, Evans grabbed her and threw her to the floor. She gave her keys to Evans at the defendant's direction. Evans then forced Ms. Blue to open the cells that housed other members of the group. At some point Ms. Blue called for help, causing the defendant to remark: "We are going to have to do something with her, because if we can get her, nobody will find her until about 6:30." It is unclear from the evidence whether the defendant and his accomplices harmed Ms. Blue further. The defendant eventually escaped and was recaptured the next day at a motel in Bennettsville, South Carolina.

The defendant presented no evidence at his trial. Other pertinent evidence is discussed at other points in this opinion where it is relevant.

[1] By his first assignment of error, the defendant argues that he is entitled to a new trial because the trial court erroneously allowed the State to introduce evidence of his escape from the Hoke County Jail. The defendant acknowledges, however, that we previously have held that "[i]t is well settled in this [S]tate that an escape from custody constitutes evidence of flight." *State v. Levan*, 326 N.C. 155, 165, 388 S.E.2d 429, 434 (1990). Evidence of flight, in turn, is admissible as evidence tending to show the defendant's guilt. *State v. Patterson*, 332 N.C. 409, 420, 420 S.E.2d 98, 104 (1992); *see also State v. Parker*, 316 N.C. 295, 304, 341 S.E.2d 555, 560 (1986). The defendant nevertheless insists that evidence of an escape from incarceration bears "little or no relevance to the issue of flight." He therefore asks us to reconsider our prior decisions and establish a new rule that, absent unusual circumstances, evidence of an escape from incarceration is not admissible as evidence of flight. Having considered the defendant's argu-

ment in this regard, however, we find no compelling reason to depart from our prior holdings which the defendant correctly recognizes as dispositive.

Alternatively, the defendant contends that even if the evidence of his escape bore some relevance to the issue of flight, any probative value it possessed was "substantially outweighed by the danger of unfair prejudice." N.C.G.S. § 8C-1, Rule 403 (1992). He therefore maintains that the trial court's decision to admit this evidence constituted an abuse of discretion under Rule 403 warranting a new trial. We disagree.

As the defendant correctly recognizes, "[w]hether to exclude evidence under Rule 403 is a matter within the sound discretion of the trial court." *State v. Penley*, 318 N.C. 30, 41, 347 S.E.2d 783, 789 (1986). This Court will find an abuse of discretion "only upon a showing that [the trial court's] ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986).

We find no abuse of discretion on the part of the trial court in the present case. As noted above, the evidence that the defendant had escaped from the Hoke County Jail was relevant and probative in that it tended to show the defendant's consciousness of his guilt. *See Patterson*, 332 N.C. at 420, 420 S.E.2d at 104; *Parker*, 316 N.C. at 304, 341 S.E.2d at 560. Further, the term "unfair prejudice" contemplates evidence having "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one." N.C.G.S. § 8C-1, Rule 403 official commentary; *see also Penley*, 318 N.C. at 41, 347 S.E.2d at 789; *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986). In light of our prior holdings regarding evidence of flight, the evidence of the defendant's escape from the Hoke County Jail "could only be viewed as having a *due* tendency to suggest a decision on a *proper basis*." *Penley*, 318 N.C. at 41, 347 S.E.2d at 789. We therefore find no abuse of discretion on the part of the trial court in admitting this evidence. Accordingly, we overrule this assignment of error.

[2] The defendant contends by his second assignment of error that he is entitled to a new trial because the trial court erroneously allowed the State to introduce evidence of threats he made during his escape from the Hoke County Jail. Prior to trial, the defendant

moved to prohibit the State from introducing any evidence regarding any threats he may have made during his escape, arguing that such evidence would be irrelevant and that any probative value it did possess would be substantially outweighed by its prejudicial effect. The trial court postponed its decision on the motion. When the State called Ms. Glenda Blue, the Hoke County Jail employee overpowered by the defendant and Terry Evans, the trial court entertained the arguments of both parties out of the presence of the jury. The court ultimately concluded that Ms. Blue's testimony, which would recount threats made by the defendant during the course of his escape, was relevant as evidence of flight. The court further determined that the probative value of the evidence would outweigh any prejudicial effect. The court therefore allowed Ms. Blue to testify regarding the details of the defendant's escape, including the defendant's remark that something would have to be done with Ms. Blue "because if we can get her, nobody will find her until about 6:30." The defendant contends that the trial court committed reversible error in allowing this testimony. We do not agree.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1992). As a general rule, "[a]ll relevant evidence is admissible." N.C.G.S. § 8C-1, Rule 402 (1992). Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (1992). As we explained above, "[w]hether to exclude evidence under Rule 403 is a matter within the sound discretion of the trial court." *Penley*, 318 N.C. at 41, 347 S.E.2d at 789. Again, we find no abuse of discretion on the part of the trial court.

We have previously explained that "the degree or nature of the flight is of great importance to the jury in weighing its probative force." *State v. Jones*, 292 N.C. 513, 527, 234 S.E.2d 555, 562-63 (1977). Evidence of flight is " 'relative' proof which must be viewed in its entire context to be of aid to the jury in the resolution of the case." *Id.* at 527, 234 S.E.2d at 563. The threats made by the defendant during the course of his escape from the

STATE v. McDOUGALD

[336 N.C. 451 (1994)]

Hoke County Jail therefore were relevant to show the entire context of the defendant's escape and the strength of his desire to escape.

Further, the trial court did not err in concluding that the probative value of this evidence was not substantially outweighed by any of the considerations set forth in Rule 403. As explained above, the evidence of the defendant's escape was highly probative in that it tended to show the defendant's consciousness of his guilt. In light of this fact, evidence tending to show the entire context of the defendant's escape "could only be viewed as having a *due* tendency to suggest a decision on a *proper basis*." *Penley*, 318 N.C. at 41, 347 S.E.2d at 789. The defendant therefore was not unfairly prejudiced by the introduction of this evidence. The defendant has failed to show that the trial court abused its discretion under Rule 403. This assignment of error is without merit.

[3] By his third assignment of error, the defendant maintains that the trial court erred in its instructions on evidence of flight. The trial court instructed the jury on flight as follows:

Ladies and gentlemen, the State contends that the defendant fled. I instruct you that an escape from custody constitutes evidence of flight. Evidence of flight may be considered by you together with all other facts and circumstances in this case in determining whether the combined circumstances amount to an admission or show a consciousness of guilt. However, proof of this circumstance is not sufficient in itself to establish the defendant's guilt. Further, this circumstance has no bearing on the question of whether the defendant acted with premeditation and deliberation. Therefore, it must not be considered by you as evidence of premeditation or deliberation.

The defendant specifically complains of that portion of the instruction informing the jury that "an escape from custody constitutes evidence of flight." The defendant insists that this portion of the instruction "amounted to a mandatory conclusive presumption that evidence of an escape was in fact evidence of flight." He argues that the instruction therefore denied him due process because it "had the ultimate effect of burden-shifting."

The defendant concedes, however, that he did not object to this instruction or request additional instructions. This assignment of error therefore is barred by Rule 10(b)(2) of the North Carolina

Rules of Appellate Procedure and the defendant is not entitled to relief unless the error, if any, constituted plain error. *State v. Odom*, 307 N.C. 655, 659-60, 300 S.E.2d 375, 378 (1983). We have recently explained the nature of a review for plain error:

> [T]o rise to the level of plain error, the error in the trial court's instructions must be "so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against him." *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993). Stated another way, the error must be one "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988).

*State v. Barton*, 335 N.C. 696, 702-03, 441 S.E.2d 295, 298 (1994).

Having reviewed the trial court's instruction on flight, we find no plain error. Except for that portion of the instruction informing the jury that "an escape from custody constitutes evidence of flight," the instruction at issue is identical to the appropriate pattern jury instruction on evidence of flight. *See* N.C.P.I. — Crim. 104.36 (1986). Further, the additional portion of the instruction complained of by the defendant is a correct statement of the law. "It is well-settled in this [S]tate that an escape from custody constitutes evidence of flight." *State v. Levan*, 326 N.C. 155, 165, 388 S.E.2d 429, 434 (1990). This is precisely the principle of which the trial court apprised the jury. Finally, as the defendant correctly recognizes, flight is not an element of any of the offenses with which the defendant was charged in the present case. The trial court's instruction on flight thus could not have relieved the State of its burden of proving every element of the offenses with which the defendant was charged beyond a reasonable doubt. We therefore cannot say the trial court committed plain error. Accordingly, we reject this assignment of error.

[4] The defendant argues by his fourth assignment of error that the trial court erred by repeating its instruction on flight three times: once for each of the offenses of first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury and discharging a firearm into occupied property. Although the defendant did not object to the instructions when given or request additional instructions, he now contends that the trial court's repeti-

STATE v. McDOUGALD

[336 N.C. 451 (1994)]

tion of the flight instruction constituted plain error in that it unduly emphasized the evidence of his escape and amounted to an improper expression of opinion by the trial court. We disagree.

The trial court in a criminal prosecution "may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C.G.S. § 15A-1222 (1988). Similarly, when delivering its instructions to the jury, the trial court "shall not express an opinion as to whether or not a fact has been proved." N.C.G.S. § 15A-1232 (1988). We conclude that the trial court ran afoul of neither of these statutory mandates in the present case.

As we have noted, the error, if any, with regard to the trial court's instruction on flight did not rise to the level of plain error. The instruction comported with the appropriate pattern jury instruction on evidence of flight and the well-settled law of this State with regard to such evidence. Mere repetition of an otherwise proper instruction does not constitute error. *Cf. State v. Bromfield*, 332 N.C. 24, 44-45, 418 S.E.2d 491, 502 (1992) (the trial court did not place undue emphasis on the State's theory of the case by employing the term "acting in concert" nearly forty times during the course of its instructions); *State v. Cousin*, 292 N.C. 461, 463, 233 S.E.2d 554, 556 (1977) (there was no improper expression of opinion where the trial court's instruction was "merely an introductory repetition" of an earlier unchallenged statement made by the prosecutor). Similarly, the fact that the trial judge in the present case repeated the instruction on· flight with regard to three of the offenses with which the defendant was charged, without more, does not constitute an improper expression of opinion. This assignment of error is without merit.

[5] By his fifth and final assignment of error, the defendant contends that he is entitled to a new trial on the charge of assault with a deadly weapon with intent to kill inflicting serious injury because the trial court erred in its instructions on the theory of acting in concert as it applied to that charge. The trial court instructed the jury, in pertinent part, as follows:

I charge that for you to find the defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury, the State must prove four things beyond a reasonable doubt. First, that *the defendant, Bernice McDougald or another or others act[ing] in concert with the defendant* assaulted the

STATE v. McDOUGALD

[336 N.C. 451 (1994)]

victim, Judy Harris, by intentionally shooting her or by shooting [her] while intentionally shooting at Ed Harris. Second, that *the defendant or another or others acting in concert with the defendant* used a deadly weapon. . . . Third, the State must prove that the defendant had the specific intent to kill Judy Harris or to kill another person at the time and place of the shooting. And fourth, that *the defendant or another or others acted in concert with the defendant* inflicting serious injury upon the victim, Judy Harris.

. . . .

For a person to be guilty of a crime, it is not necessary that he himself do all of the acts necessary to constitute the crime. If two or more persons act together with a common purpose to commit assault with a deadly weapon with intent to kill inflicting serious injury, each of them is held responsible for the acts of the others done in the commission of that assault. However, the mere presence of a person at the scene of the crime is not enough to constitute acting in concert.

So I charge that if you find from the evidence beyond a reasonable doubt that on or about the alleged date Bernice McDougald, acting either by himself or acting together with Kerry Morston or others, intentionally shot the victim, Judy Harris, with a firearm or intentionally shot at Ed Harris with a firearm but hit Judy Harris and that the defendant intended to kill Judy Harris or Ed Harris and did seriously injure Judy Harris, it would be your duty to return a verdict of guilty of assault with a deadly weapon with intent to kill inflicting serious injury. However, if you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty as to this charge.

(Emphasis added.) The defendant insists that because of its repeated use of the phrase "the defendant or another or others acting in concert with the defendant," the trial court erroneously permitted the jury to find the defendant guilty of assault with a deadly weapon if the jury believed that the crime was committed by someone other than the defendant even if that person had no connection to the defendant. We disagree.

By its use of the phrase "the defendant or another or others acting in concert with the defendant," the trial court was merely

explaining to the jury it properly could convict the defendant of the crime charged if he himself acted, *alone or with one or more persons*, to commit the crime and he intended that the crime be committed. Indeed, the trial court subsequently clarified this point by instructing the jury that it properly could find the defendant guilty if it found that the defendant, "acting either *by himself or acting together with Kerry Morston or others*," assaulted Mrs. Harris and that the defendant possessed a specific intent to kill. Additionally, the trial court cautioned the jury that the defendant's "mere presence . . . at the scene of the crime is not enough to constitute acting in concert." Therefore, viewing the instruction as a whole, we conclude that the trial court informed the jury that it could convict the defendant of assault with a deadly weapon only if it found that the *defendant himself* acted, alone or with one or more persons, to commit the offense and that the *defendant himself* possessed an intent to kill. Accordingly, this assignment of error is without merit.

For the foregoing reasons, we hold that the defendant received a fair trial free of prejudicial error.

NO ERROR.