STATE OF NORTH CAROLINA
v.
SHELTON DEANGELO EPPS, Defendant
No. COA06-750
North Carolina Court of Appeals
Filed June 5, 2007
This case not for publication
Attorney General Roy Cooper, by Assistant Solicitor General John F. Maddrey, for the State.
Parish & Cooke, by James R. Parish, for defendant-appellant.
GEER, Judge.
Defendant Shelton Deangelo Epps appeals from his convictions for felony murder and first degree kidnapping. This appeal arises out of a murder that occurred in the course of a robbery of the victim's car by defendant and two friends. On appeal, defendant primarily argues that the trial court violated his Sixth Amendment right to confront witnesses by admitting the statement of a non-testifying co-defendant. Because, however, the only significant distinction between defendant's confession  which acknowledged his participation in the events  and the statement of the co-defendant was the identity of the shooter, we can perceive no basis for concluding that the jury would have rendered a not guilty verdict in the absence of the statement. We, therefore, hold that anyerror in admitting the statement was harmless beyond a reasonable doubt.

Facts
The State's evidence at trial tended to show the following facts. On the morning of 17 February 2004, Sean Owen told his sister that he had communicated with an individual over the Internet, was meeting him for the first time in person that afternoon, and expected to rendezvous with him for sex later that evening. Owen left the house in his mother's burgundy Ford Contour.
On the same day, Matthew Taylor and Derrick Maiden were let out of their high schools early on account of snow. They arrived at Taylor's grandmother's house in Durham, North Carolina at around noon. Defendant, who was Taylor's cousin and did not attend high school, was already there. While Maiden and defendant played video games, Taylor left the room with his cellular phone.
When Taylor returned, he told defendant and Maiden that a car was on its way. At trial, Maiden testified that he and Taylor had previously discussed meeting a gay man via the Internet and robbing him of his car. The group went outside to the porch and began talking about stealing the car. Taylor went back inside and returned with a gun.
Defendant, Taylor, and Maiden walked to a nearby "clubhouse" where they expected to meet the car. When they arrived, they saw that their intended victim was already there, parked in a burgundyFord Contour. At trial, Maiden identified a photograph of Owen as the man in the car.
Defendant, Taylor, and Maiden got into the Contour with Owen, who agreed to drive the group to a nearby convenience store to buy a cigar to use for smoking marijuana. After getting the cigar, Taylor instructed Owen to drive to a local park, where they got out of the Contour because Owen did not want to smoke marijuana in the car. As the group walked toward a picnic table, Owen was shot in the head, although the evidence at trial conflicted as to whether it was defendant or Taylor who actually pulled the trigger. Despite the injury, Owen immediately began running and yelled "please don't do this to me."
Defendant, Taylor, and Maiden chased Owen and, although Owen had already dropped his car keys, the group began beating him. Owen fell to the ground and, while struggling, was shot a second time, punched, kicked, stomped, and choked. Defendant, Taylor, and Maiden then carried Owen to a nearby riverbank and "kicked him in." The group did not leave until they heard the body hit the water. Owen's cause of death was later determined to be drowning.
After dropping Owen into the river, defendant, Taylor, and Maiden returned to Owen's car, and Taylor drove the group back to his grandmother's house. When, a few days later, Taylor parked the car in a fire zone at his school, school resource officers placed a boot on the vehicle. Taylor had a friend, Jemetrus Harris, pay to have the boot removed and retrieve the car. When Harris waslater questioned by officers with the Durham Police Department, he informed them that he had retrieved the car for Taylor.
Owen's body was removed from the river and identified on 21 February 2004. After one of Taylor's friends told him that the police were looking for Taylor and also Owen's vehicle, defendant, Taylor, and Maiden wiped down the interior of Owen's car with bleach to remove any fingerprints. The following morning, 22 February 2004, they parked the car in a dead end street, saturated its interior with lighter fluid, and set the car on fire.
On 4 March 2004, police arrested defendant, Taylor, and Maiden. Defendant was indicted for murder and first degree kidnapping. A jury found defendant guilty of first degree murder, under the felony murder rule, and first degree kidnapping. The jury declined to find defendant guilty of first degree murder based on premeditation and deliberation. The trial court sentenced defendant to life imprisonment without the possibility of parole for the first degree murder conviction and imposed a consecutive sentence of 73 to 97 months imprisonment for the first degree kidnapping conviction. Defendant timely appealed to this Court.

I
Defendant first argues that the trial court violated his Sixth Amendment right of confrontation by permitting the State, over defendant's objection, to introduce the statement of a non-testifying and previously-tried co-defendant. When a violation of a defendant's right to confrontation is found on appeal, defendant will prevail unless the State can show that any such violation washarmless beyond a reasonable doubt. State v. Thompson, 359 N.C. 77, 114, 604 S.E.2d 850, 875 (2004), cert. denied, 546 U.S. 830, 163 L. Ed. 2d 80, 126 S. Ct. 48 (2005). See also N.C. Gen. Stat. § 15A-1443(b) (2005) ("A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt.").
In Crawford v. Washington, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), the United States Supreme Court held that "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374. Although the Supreme Court did not set out a comprehensive definition of "testimonial evidence," it did conclude that "[s]tatements taken by police officers in the course of interrogations" are testimonial. Id. at 52, 158 L. Ed. 2d at 193, 124 S. Ct. at 1364.
The trial court admitted a statement Taylor had given during police interrogation. According to Taylor's statement, defendant and Maiden were the primary culprits in Owen's murder, and Taylor had "nothing to do with [Owen's] death" other than merely being present during the offense. Because Taylor's statement was provided to police during interrogation, it is testimonial under Crawford, and, therefore, would be admissible only if Taylor was unavailable at trial and if defendant had a prior opportunity forcross-examination. State v. Pullen, 163 N.C. App. 696, 702, 594 S.E.2d 248, 252 (2004).
Even if admission of Taylor's statement was error under Crawford, however, we hold the error was harmless beyond a reasonable doubt. "To find harmless error beyond a reasonable doubt, we must be convinced that there is no reasonable possibility that the admission of this evidence might have contributed to the conviction." State v. Ladd, 308 N.C. 272, 284, 302 S.E.2d 164, 172 (1983). A constitutional error is sufficiently harmless under this standard when there is other, overwhelming evidence of defendant's guilt. State v. Thompson, 118 N.C. App. 33, 42, 454 S.E.2d 271, 276, disc. review denied, 340 N.C. 262, 456 S.E.2d 837 (1995).
Here, defendant's statement to police was admitted at trial without objection. In that statement, defendant admitted to participating with Maiden and Taylor in robbing and beating Owen and then dumping him in the river. Likewise, Maiden testified at trial without objection that he, defendant, and Taylor all participated in the robbery and beating. The only significant distinction between defendant's, Taylor's, and Maiden's accounts of the events was who actually shot Owen. The identity of the shooter was, however, immaterial to the conviction, given that the jury convicted defendant of first degree murder under the felony murder rule, and the evidence was undisputed that defendant participated in the armed robbery and beating of the victim, including throwing him into the river, which was the actual cause of death. See State v. Mann, 355 N.C. 294, 306-07, 560 S.E.2d 776, 784 (upholdingconviction for first degree murder under felony murder rule on acting in concert grounds), cert. denied, 537 U.S. 1005, 154 L. Ed. 2d 403, 123 S. Ct. 495 (2002).
In light of the overwhelming evidence establishing that defendant, Maiden, and Taylor jointly carried out Owen's robbery, kidnapping, and murder, we conclude that there is no reasonable possibility that the admission of Taylor's statement contributed to defendant's conviction. Consequently, any error resulting from the admission of Taylor's statement was harmless beyond a reasonable doubt.

II
Defendant next argues that the trial court erred by failing to dismiss the kidnapping indictment for insufficient evidence because, according to defendant, the State failed to present any evidence that Owen was restrained in any way beyond that required for robbery with a dangerous weapon. Our Supreme Court has held:
It is self-evident that certain felonies (e.g., forcible rape and armed robbery) cannot be committed without some restraint of the victim. We are of the opinion, and so hold, that G.S. 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. To hold otherwise would violate the constitutional prohibition against double jeopardy. Pursuant to the above mentioned principle of statutory construction, we construe the word "restrain," as used in G.S. 14-39, to connote a restraint separate and apart from that which is inherent in the commission of the other felony.
State v. Fulcher, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978). As a result, the question on appeal is "whether there was substantial evidence that the defendant[] restrained . . . the victim separate and apart from any restraint necessary" to accomplish the armed robbery. State v. Mebane, 106 N.C. App. 516, 532, 418 S.E.2d 245, 255, appeal dismissed and disc. review denied, 332 N.C. 670, 424 S.E.2d 414 (1992). See also State v. Beatty, 347 N.C. 555, 559, 495 S.E.2d 367, 369 (1998) (noting "a person cannot be convicted of kidnapping when the only evidence of restraint is that `which is an inherent, inevitable feature' of another felony such as armed robbery" (quoting Fulcher, 294 N.C. at 523, 243 S.E.2d at 351)). We hold that there was sufficient evidence, and the trial court properly denied the motion to dismiss.
The State presented evidence that tended to show Owen was shot in the head and immediately began running away. Defendant and the others caught Owen and  after he dropped his keys  punched, kicked, choked, shot, and dragged Owen to a riverbank and then dumped him into the water. All acts of violence subsequent to when Owen abandoned his car and dropped his keys were acts of "restraint" that were no longer necessary to rob Owen of his car. See State v. Muhammad, 146 N.C. App. 292, 296, 552 S.E.2d 236, 238 (2001) (sufficient evidence of restraint beyond what was required for robbery existed when defendant placed victim in a choke hold, hit him in the side three times, wrestled him to the floor, grabbed him around the throat, and pointed a gun at his head). The trial court, therefore, properly denied defendant's motion to dismiss the kidnapping charge.

III
Finally, defendant argues that the trial court erred in its jury charge by repeating the instruction for acting in concert three times  one time each for robbery, kidnapping, and murder. Defendant concedes the instruction itself was correct, but nevertheless argues that "the multiple instructions by the court clearly amounts to an expression of an opinion on the part of the trial judge" that defendant was guilty.
We agree with the State that this argument is foreclosed by State v. McDougald, 336 N.C. 451, 461, 444 S.E.2d 211, 217 (1994), in which our Supreme Court concluded that "[m]ere repetition of an otherwise proper instruction does not constitute error." The Court in McDougald held that the fact that the trial judge "repeated the instruction on flight with regard to three of the offenses with which the defendant was charged, without more, does not constitute an improper expression of opinion." Id. As we see no principled basis upon which to distinguish McDougald, we overrule this assignment of error.
We note that defendant also challenges the sufficiency of the short-form indictment used to charge him with first degree murder. Defendant concedes, however, that both our Supreme Court and this Court have repeatedly upheld short-form indictments featuring nearly identical language as sufficient to charge first degree murder. See, e.g., State v. Hunt, 357 N.C. 257, 263, 582 S.E.2d 593, 598, cert. denied, 539 U.S. 985, 156 L. Ed. 2d 702, 124 S. Ct. 44 (2003); State v. Phillips, 151 N.C. App. 185, 196, 565 S.E.2d697, 704 (2002). This Court is bound to follow the precedent of our Supreme Court as well as prior decisions by panels of this Court. State v. Jones, 358 N.C. 473, 487, 598 S.E.2d 125, 133 (2004); State v. Scott, ___ N.C. App. ___, ___, 637 S.E.2d 292, 294 (2006), disc. review denied, ___ N.C. ___, ___ S.E.2d ___, 2007 NC LEXIS 235, 2007 WL 1063579 (Mar. 8, 2007). As only the Supreme Court can revisit this issue, we must decline defendant's invitation to "review [these] holdings."
No error.
Judges CALABRIA and JACKSON concur.
Report per Rule 30(e).