STATE OF NORTH CAROLINA, Plaintiff v. JERRY DALE SMITH, Defendant

No. COA06-1321

(Filed 18 September 2007)

**1. Assault— deadly weapon on government official—hands and water—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of assault with a deadly weapon on a government official based on defendant using his hands to submerge a deputy's head, chest, and abdomen in a river and to hold him there, even though defendant contends hands and water are not a deadly weapon as a matter of law, because: (1) the deadly character of a weapon depends more upon the manner of its use and the condition of the person assaulted rather than the intrinsic character of the weapon itself; (2) the State presented substantial evidence from which a reasonable juror could find that the manner in which defendant used his hands in conjunction with water was likely to cause death or serious bodily harm to the deputy, including evidence that defendant pushed the deputy into the water, forcibly held his head under the water, and pushed him back under the water after he managed to get a breath; and (3) the State was not required to show that the deputy was significantly smaller or weaker than defendant, or that the deputy was injured or otherwise incapacitated when defendant assaulted him, since defendant did not assault the deputy with his hands alone but instead used his hands to bring the deputy to an instrument of the assault.

**2. Assault— deadly weapon on government official—lesser-included offense—misdemeanor assault on government official**

The trial court in a prosecution for felony assault with a deadly weapon on a government official erred by refusing to submit to the jury the lesser-included offense of misdemeanor assault on a government official, because: (1) a defendant is entitled to have all lesser degrees of offenses supported by the evidence submitted to the jury as possible alternative verdicts; (2) it cannot be known whether the jury would have convicted defendant of the lesser offense if it had been permitted to do so; and (3) the prejudicial error cannot be cured by defendant's subsequent conviction for the felony assault with which he was charged.

**3. Sentencing— habitual felon—ancillary to indictment for substantive felony**

> Defendant's conviction for attaining habitual felon status is vacated because: (1) North Carolina's Habitual Felons Act does not authorize an independent proceeding to determine a defendant's status as a habitual felon separate from the prosecution of a predicate substantive felony, and the habitual felon indictment is necessarily ancillary to the indictment for the substantive felony; and (2) a new trial was ordered on defendant's conviction for felony assault with a deadly weapon on a government official.

**4. Sentencing— consolidated offenses—remand for resentencing**

> Defendant's conviction for resisting a public officer is remanded for resentencing, because: (1) the trial court consolidated this conviction with defendant's convictions for assault with a deadly weapon on a government official and attaining habitual felon status for sentencing purposes; and (2) a new trial was ordered on the assault conviction, and defendant's conviction for attaining habitual felon status was vacated.

Appeal by defendant from judgment entered on or about 6 June 2006 by Judge Zoro J. Guice, Jr. in Superior Court, Haywood County. Heard in the Court of Appeals 21 March 2007.

> *Attorney General Roy A. Cooper, III by Special Deputy Attorney General John J. Aldridge, III for the State-appellee.*

> *William B. Gibson for defendant-appellant.*

STROUD, Judge.

Defendant Jerry Dale Smith appeals from judgment entered upon jury verdicts finding him guilty of assault with a deadly weapon on a government official, misdemeanor resisting a public officer, and attaining habitual felon status. These convictions arose out of an altercation in which defendant submerged a Haywood County Deputy Sheriff in the Pigeon River. Defendant assigns error to the trial court's denial of his motion to dismiss the charge of assault with a deadly weapon on a government official and to the trial court's refusal to submit the lesser-included offense of misdemeanor assault on a government official to the jury. In support of these assignments, defendant argues that, as a matter of law, "hands and water" are not deadly weapons. Alternatively, defendant argues that a trial court must sub-

mit the lesser-included offense of misdemeanor assault on a government official to the jury unless the court determines as a matter of law that the defendant did use a deadly weapon in carrying out the alleged assault. Finally, defendant argues that if this Court reverses his conviction for felony assault with a deadly weapon on a government official, then the Court must also vacate the judgment and commitment under which he was sentenced as a habitual felon.

We hold that "hands and water" together may be deadly weapons. Accordingly, we conclude that the trial court properly denied defendant's motion to dismiss. However, we agree with defendant that the trial court erred by refusing to submit the lesser-included offense of misdemeanor assault on a government official to the jury. For this reason, we order a new trial on defendant's conviction for felony assault with a deadly weapon on a government official (04CRS003786). We vacate defendant's conviction for attaining habitual felon status (04CRS003785). Finally, we remand defendant's conviction for resisting a public officer (04CRS052937) for resentencing because the trial court consolidated this conviction with defendant's convictions for assault with a deadly weapon on a government official and attaining habitual felon status for sentencing purposes.

## I. Background

On 6 June 2006, Defendant Jerry Dale Smith was tried in Superior Court, Haywood County for two counts of assault with a deadly weapon on a government official, attempted murder, resisting a public officer, and attaining habitual felon status. One count of assault with a deadly weapon on a government official involved the use of handcuffs as the instrument of assault during a fist-fight. The other count of assault involved the use of defendant's hands and water together as the instrument of the assault, during which defendant submerged the victim in the Pigeon River.

Evidence presented at trial tended to show the following: On 3 August 2004, Haywood County Deputy Sheriff Joseph Patrick Henderson informed the Haywood County Sheriff's Office that he was traveling on foot to a residence near the Pigeon River. There, Deputy Henderson intended to serve defendant with arrest warrants and to question defendant regarding a breaking and entering. Deputy Henderson had seen defendant coming to and from the residence and was aware that defendant was dating a woman who lived near the Pigeon River. Deputy Henderson was dressed in his official uniform and was wearing his badge, radio, and gun belt.

Upon arriving at the residence, Deputy Henderson saw defendant exit the back door carrying a suitcase. Deputy Henderson recognized defendant from previous encounters as the person upon whom he needed to serve the arrest warrants. When defendant heard noise from Deputy Henderson's radio, defendant dropped the suitcase and began to flee.

Deputy Henderson identified himself as a deputy sheriff and instructed defendant not to run. Defendant ignored Deputy Henderson's order and the deputy pursued defendant through the woods to the bank of the Pigeon River, where defendant entered the water and fell. Deputy Henderson seized and handcuffed defendant in the river. After handcuffing defendant, Deputy Henderson informed defendant that he was under arrest and walked defendant toward the riverbank.

Arriving at the riverbank, defendant exited the water first. Deputy Henderson followed but slipped forward into defendant, causing them both to fall. Deputy Henderson stood up and tried to grab defendant by his arm to help him stand as well. Defendant jerked away, cursing at Deputy Henderson.

Defendant remained on the ground while Deputy Henderson contacted the dispatch office to request assistance. While Deputy Henderson waited for back-up officers to arrive, defendant became increasingly hostile. Deputy Henderson attempted to stand defendant up again, but defendant continued to pull away. The third time that Deputy Henderson tried to stand defendant up, defendant had escaped from the handcuffs. Defendant lunged toward Deputy Henderson and pushed the deputy hard in the chest, causing Deputy Henderson to fall backward into the river. Defendant jumped into the river and straddled Deputy Henderson, whose lower back was against a large rock, grabbing the deputy by his uniform shirt and vest straps. At trial, Deputy Henderson testified that defendant plunged his head and upper body under the water for what "seemed . . . like forever," using "his upper body strength and all his weight on top of me." Deputy Henderson further testified that defendant held him under the water for between thirty and forty-five seconds, that the water in this area of the river had a strong current, and that the water was a "little higher than the knee." During this time, Deputy Henderson's head, chest, and abdomen were completely submerged in the river.

Deputy Henderson began to panic and attempted to push himself up out of the water, but the weight of defendant pushing down

and the strong current of the river overcame his initial attempt. On a second attempt to free himself, Deputy Henderson raised his head above water enough to breathe in a single breath. Defendant plunged Deputy Henderson under the water again for approximately fifteen to twenty seconds. Throughout the entire struggle, defendant grasped Deputy Henderson's vest straps, applying force to keep him submerged.

Deputy Henderson then used his right leg and hands to roll defendant to the middle of the river, where they both stood up. Defendant punched Deputy Henderson's head twice, using the handcuffs as "a pair of brass knuckles," with one cuff around his right wrist and the other around his forefingers. As the fight continued, Deputy Henderson used his pepper spray on defendant. After being hit by the pepper spray, defendant ran and attempted to flee again.

Deputy Henderson chased defendant, apprehending him on the riverbank. After seizing defendant, Deputy Henderson engaged defendant in conversation, which quieted him. Deputy Henderson then took defendant into custody.

At the close of all the evidence, defendant moved to dismiss one charge of assault with a deadly weapon on a government official arguing that "hands and water," as a matter of law, are not deadly weapons. The trial court denied defendant's motion. During the charge conference, defendant asked the trial court to instruct the jury on misdemeanor assault on a government official, arguing that the jury could find defendant was guilty of this lesser-included offense. The trial court denied this request as well.

On 6 June 2006, the jury found defendant guilty of assault with a deadly weapon on a government official, with "hands and water" being the deadly weapon; resisting a public officer; and attaining habitual felon status. The jury found defendant not guilty of attempted murder and assault with a deadly weapon on a government officer, with the deadly weapon being handcuffs. On 6 June 2006, the trial court consolidated defendant's convictions, entering a presumptive sentence of 151 months minimum to 191 months maximum imprisonment. Defendant appeals from this final judgment, arguing that the trial court erred by denying his motion to dismiss the charge of assault with a deadly weapon on a government official, with "hands and water" being the deadly weapon and, alternatively, by refusing to submit to the jury the lesser-included offense of misdemeanor assault with a deadly weapon on a government official.

## II. Motion to Dismiss

[1] Defendant assigns error to the trial court's denial of his motion to dismiss the charge of assault with a deadly weapon on a government official. Defendant argues that, as a matter of law, hands and water are not à deadly weapon. We disagree.

When ruling on a defendant's motion to dismiss, the trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged, and (2) that the defendant is the perpetrator of the offense. *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982); N.C. Gen. Stat. § 15A-1227 (2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Cummings*, 46 N.C. App. 680, 683, 265 S.E.2d 923, 925, *aff'd*, 301 N.C. 374, 271 S.E.2d 277 (1980). This Court reviews the trial court's denial of a motion to dismiss *de novo*. *State v. Mckinnon*, 306 N.C. 288, 298, 293 S.E.2d 118, 125 (1982).

The use of a deadly weapon is an essential element of the offense of assault with a deadly weapon upon a government official. N.C. Gen. Stat. § 14-34.2 (2005). The North Carolina Supreme Court has defined a deadly weapon as "any instrument which is likely to produce death or great bodily harm under the circumstances of its use." *State v. Smith*, 187 N.C. 469, 470, 121 S.E. 737, 737 (1924). Sometimes, "the deadly character of [a] weapon depends . . . more upon the manner of its use, and the condition of the person assaulted, than upon the intrinsic character òf the weapon itself." *Id*. When the deadly character of an instrumentality is dependent upon the particular circumstances of a case, the question is one of fact to be determined by a jury. *State v. Beal*, 170 N.C. 764, 767, 87 S.E.2d 416, 417 (1915) ("If its character as being deadly or not, depended upon the facts and circumstances, it became a question for the jury with proper instructions from the court."); *State v. Parker*, 7 N.C. App. 191, 195-96, 171 S.E.2d 665, 667-68 (1970) (When there is a question about whether the alleged deadly weapon is "likely to produce fatal results," that is created by "the manner of its use, or the part of the body at which the blow is aimed, its alleged deadly character is one of fact to be determined by the jury.").

The North Carolina Supreme Court has determined that the following instruments may present a jury question as to their deadly nature: a plastic bag placed over the head and face of the victim and secured tightly with tape around the neck, *State v. Strickland*, 290

N.C. 169, 178, 225 S.E.2d 531, 538 (1976); fire, when the defendant set fire to a house in which a child was sleeping, *State v. Riddick*, 315 · N.C. 749, 760, 340 S.E.2d 55, 61 (1986); and a leather belt with a metal buckle, which the defendant used to inflict severe bruises on a three-year-old child, *State v. Cauley*, 244 N.C. 701, 94 S.E.2d 915 (1956). In each of the cases cited above, the defendant used his or her hands to bring the instrument of the assault to the victim.

·We note that although it has not been expressly stated in the North Carolina cases involving use of "deadly weapons," the defendant has invariably used his or her hands in conjunction with each weapon involved. In every North Carolina case cited in this opinion, and in every North Carolina case we have found dealing with an assault with a deadly weapon, the defendant used his or her hands. In all of the cases involving knives, guns, rocks, bricks, sticks, and other similar weapons, each defendant has picked up the weapon with his or her hands in order to use the weapon against the victim. Thus, in the majority of cases, the defendant has used his or her hands to bring the instrumentality of the assault to the victim, but the defendant may also use the hands to bring the victim to the instrumentality of the assault.

In *State v. Brinson*, 337 N.C. 764, 448 S.E.2d 822 (1994), the defendant used his hands to bring the victim to the instruments of the assault, which were the bars and floor of his jail cell. The defendant was indicted for assault with a deadly weapon with intent to kill. *Id.* at 765, 448 S.E.2d at 823. In the indictment, the State alleged that the defendant "slamm[ed]" the victim's head "against the cell bars and floor," breaking his neck and causing paralysis. *Id.* at 767, 448 S.E.2d at 824. Considering the sufficiency of that indictment, the North Carolina Supreme Court held that "under [this] . . . indictment the State properly may have asserted at trial that defendant's fists, the cell floor, the cell bars, or a combination thereof were the deadly weapons which caused the victim's serious injury." *Id.* at 769, 448 S.E.2d at 825. In so holding, the Court noted that "[w]hether an item is deadly often depends entirely on its use." *Id.* at 769, 448 S.E.2d at 825. *State v. Brinson* is analogous to the case *sub judice* in which defendant used his hands to submerge Deputy Henderson's head, chest, and abdomen in the Pigeon River and to hold him there.

The State presented evidence to show that the manner in which defendant used his hands in conjunction with water was likely to cause death or serious bodily harm to Deputy Henderson, including evidence that defendant pushed Deputy Henderson into the river,

forcibly held his head under the water, and pushed him back under the water after he managed to get a breath.

Based on the circumstances stated above, the State presented substantial evidence from which a reasonable juror could find that defendant's submerging of Deputy Henderson in the river was likely to produce "death or great bodily harm." Accordingly, we hold that "hands and water" may be a deadly weapon and that the trial court properly submitted this question to the jury.[1] In so holding, we emphasize that defendant did not assault Deputy Henderson with his hands alone; rather, defendant used his hands to bring the deputy to an instrument of the assault, forcibly submerging the deputy in the Pigeon River and holding him there. Therefore, the State need not show that Deputy Henderson was significantly smaller or weaker than defendant or that the deputy was injured or otherwise incapacitated when defendant assaulted him. *Cf. State v. Rogers*, 153 N.C. App. 203, 211, 569 S.E.2d 657, 663 (2002), *disc. review denied*, 357 N.C. 168, 581 S.E.2d 442 (2003) (explaining that, by themselves, "hands and fists may be considered deadly weapons, given the manner in which they were used and the relative size and condition of the parties involved."); *see e.g. State v. Shubert*, 102 N.C. App. 419, 424, 402 S.E.2d 642, 645 (1991) (concluding that the defendant's fists and feet were deadly weapons when used to injure a defenseless eighty-one year old woman).

---

1. Although we find no reported case in the United States which specifically addresses the use of water as a deadly weapon, there are many reported cases of death by drowning and, in particular, homicides in which drowning in water is the cause of death. The fact that so many cases involving the immersion of the victim in water result in death by drowning and, therefore, are reported as cases of murder or manslaughter may be an indication of just how deadly a weapon water can be. *See e.g., State v. Parker*, 354 N.C. 268, 553 S.E.2d 885 (2001) (first-degree murder conviction for drowning of eighty-six year old victim in a bathtub), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002); *State v. Williams*, 231 N.C. 214, 56 S.E.2d 574 (1949) (involuntary manslaughter conviction for pulling victim who could not swim into deep water, where she drowned); *State v. Scoggins*, 225 N.C. 71, 33 S.E.2d 473 (1945) (manslaughter conviction for drowning victim in a pond); *State v. Epps*, 183 N.C. App. 490, 645 S.E.2d 230 (unpublished) (No. COA06-750) (June 5, 2007) (felony murder conviction in which victim's cause of death was drowning); *In re K.T.L.*, 177 N.C. App. 365, 629 S.E.2d 152 (2006) (involuntary manslaughter adjudication of juvenile, where victim was thrown into a septic tank and drowned), *disc. review denied*, 362 N.C. ——, 642 S.E.2d 442 (2007); *State v. Marecek*, 152 N.C. App. 479, 568 S.E.2d 237 (2002) (second-degree murder conviction of husband for drowning his wife at the beach).

There has been at least one unreported case in which water was held to be a deadly weapon. *Martinez v. State*, —— S.W.3d —— (unpublished) (No. 13-98-400-CR) (August 10, 2000). *Martinez* also involved a defendant who held a law enforcement officer's head under water in a struggle that ensued when the officer attempted to arrest the defendant. *Id.*

### III. Jury Instructions

**[2]** Defendant assigns error to the trial court's refusal to submit to the jury the lesser-included offense of misdemeanor assault on a government official. In support of this assignment, defendant argues that a trial court must submit the lesser-included offense of misdemeanor assault on a government official to the jury unless the court determines as a matter of law that the defendant did use a deadly weapon. We agree.

When considering whether to submit to the jury a lesser included offense, the trial court must determine whether (1) "the lesser offense is, as a matter of law, an included offense for the crime for which the defendant is indicted" and (2) "there is evidence in the case which will support a conviction of the lesser included offense." *State v. Drew*, 162 N.C. App. 682, 685, 592 S.E.2d 27, 29, *appeal dismissed and disc. review denied*, 358 N.C. 735, 601 S.E.2d 867 (2004).

N.C. Gen. Stat. § 14-34.2 (2005) provides that "an individual is guilty of [felony] assault with a deadly weapon on a government official where the individual: (i) commits an assault; (ii) with a firearm or other deadly weapon; (iii) on a government official; (iv) who is performing a duty of the official's office." *State v. Spellman*, 167 N.C. App. 374, 380, 605 S.E.2d 696, 701 (2004), *disc. review denied*, 359 N.C. 325, 611 S.E.2d 845 (2005). N.C. Gen. Stat. § 14-33 (2005) provides that the elements of misdemeanor assault on a government official are (i) an assault; (ii) on a government official; (iii) when the official is discharging or attempting to discharge his official duties. Because " 'all of the essential elements' " of misdemeanor assault on a government official are " 'also . . . essential elements included in' " felony assault with a deadly weapon on a government official, it is a lesser included offense of that felony. *See State v. Hinton*, 361 N.C. 207, 210, 639 S.E.2d 437, 439 (2007) (quoting *State v. Weaver*, 306 N.C. 629, 635, 295 S.E.2d 375, 379 (1982), *overruled in part on other grounds by State v. Collins*, 334 N.C. 54, 61, 431 S.E.2d 188, 193 (1993)).

In *State v. Palmer*, 293 N.C. 633, 643, 239 S.E.2d 406, 413 (1977), the North Carolina Supreme Court considered whether the trial court erred by refusing to submit the offense of simple assault to the jury when there was

a conflict in the evidence regarding either the nature of the weapon or the manner of its use, with some of the evidence tending to show that the weapon used or as used would not likely pro-

duce death or great bodily harm and other evidence tending to show the contrary.

In that case, the defendant used a "hard wooden club weighing two pounds and eleven ounces, approximately 43 1/4 inches long, two inches in diameter at the club end, and one and one-half inches in diameter at the handle" to assault the victim. *Id.* at 635, 239 S.E.2d at 407. At the close of evidence, the trial court instructed jurors that they may return any of six possible verdicts: "guilty of assault with a deadly weapon with intent to kill inflicting serious injury; guilty of assault with a deadly weapon with intent to kill; guilty of assault with a deadly weapon inflicting serious injury, guilty of assault with a deadly weapon; guilty of assault inflicting serious injury; or not guilty." *Id.* at 641, 239 S.E.2d at 412. Because the facts of *Palmer* created a jury question as to whether the instrument of assault was a deadly weapon, the Court held that the lesser-included offense of simple assault should have been submitted to the jury as well. *Id.* at 643-44, 239 S.E.2d at 413. The Court concluded that *Palmer* "f[e]ll[] within the principle that a defendant is entitled to have all lesser degrees of offenses supported by the evidence submitted to the jury as possible alternate verdicts." *Id.* at 643-44, 239 S.E.2d at 413. The Court further concluded that "[f]ailure to submit this option was not cured by the verdict finding that the stick was a deadly weapon" because "it cannot be known whether the jury would have convicted defendant of the lesser offense if it had been permitted to do so." *Id.* at 644, 239 S.E.2d at 413.[2]

We determine that *State v. Palmer* controls the case *sub judice.* Having held that the trial court properly submitted to the jury the question of whether defendant's use of "hands and water" was the use of a "deadly weapon," we further hold that the trial court erred by refusing to submit to the jury the lesser-included offense of misdemeanor assault on a government official. This is prejudicial error that cannot be cured by defendant's subsequent conviction for felony assault with a deadly weapon on a government official. *See id.* at 644, 239 S.E.2d at 413; *State v. Thacker,* 281 N.C. 447, 456, 189 S.E.2d 145, 151 (1972) ("Error in failing to submit the question of a defendant's guilt of lesser degrees of the same crime is not cured by a verdict of guilty of the offense charged because, in such a case, it cannot be known whether the jury would have convicted of a lesser degree if

---

2. In so holding, the Court also noted that the defendant would not have been entitled to an instruction on simple assault if the "stick" was a deadly weapon as a matter of law. *Id.* at 643, 239 S.E.2d at 413.

the different permissible degrees arising on the evidence had been correctly presented in the charge.") Accordingly, we reverse defendant's conviction for assault with a deadly weapon on a government official and remand this matter to Superior Court, Haywood County for a new trial.

## IV. Habitual Felon

**[3]** Defendant argues that if this Court reverses his conviction for felony assault with a deadly weapon on a government official, then the Court must also vacate the judgment and commitment under which he was sentenced as a habitual felon. We agree.

North Carolina's Habitual Felons Act, N.C. Gen. Stat. §§ 14-7.1 *et seq.* (2005), provides that a defendant who has been convicted of, or pled guilty, to three felony offenses may be indicted for attaining habitual felon status. *See also State v. Allen*, 292 N.C. 431, 432-33, 233 S.E.2d 585, 587 (1977). "The effect of such a proceeding 'is to enhance the punishment of those found guilty of crime who are also shown to have been convicted of other crimes in the past.' " *Id.* at 435, 233 S.E.2d at 588 (quoting *Spencer v. Texas*, 385 U.S. 554, 556, 17 L. Ed. 2d 606, 609 (1967)). The act does not authorize an independent proceeding to determine a defendant's status as a habitual felon separate from the prosecution of a predicate substantive felony, and the habitual felon indictment is necessarily ancillary to the indictment for the substantive felony. *Id.* at 434, 233 S.E.2d at 587; *see also State v. Cheek*, 339 N.C. 725, 453 S.E.2d 862 (1995).

Here, the State indicted defendant on three felony charges: assault with a deadly weapon on a government official, with the deadly weapon being hands and water; assault with a deadly weapon on a government official, with the deadly weapon being handcuffs; and attempted first-degree murder. The jury acquitted defendant of attempted first-degree murder and also acquitted defendant of assault with a deadly weapon on a government official, with the deadly weapon being handcuffs. The jury convicted defendant of the assault with a deadly weapon on a government official, with the deadly weapon being hands and water. Because we order a new trial on this charge, we vacate the judgment sentencing defendant as a habitual felon.

## V. Conclusion

For the reasons stated above, we determine that the State presented substantial evidence from which a reasonable juror could find

that defendant's submerging of Deputy Henderson in the river was likely to produce "death or great bodily harm." Accordingly, we hold that "hands and water" may be a deadly weapon and that the trial court properly submitted this question to the jury. We further hold that the trial court erred by refusing to submit to the jury the lesser-included offense of misdemeanor assault on a government official. This is a prejudicial error that cannot be cured by defendant's subsequent conviction for felony assault with a deadly weapon on a government official.

**[4]** In summary, we order a new trial on defendant's conviction for felony assault with a deadly weapon on a government official (04CRS003786). We vacate defendant's conviction for attaining habitual felon status (04CRS003785). Finally, we remand defendant's conviction for resisting a public officer (04CRS052937) for resentencing because the trial court consolidated this conviction with defendant's convictions for assault with a deadly weapon on a government official and attaining habitual felon status for sentencing purposes.

Defendant failed to address the remaining assignments of error in his brief and they are deemed waived. N.C.R. App. P. 28(b)(6) (2005).

NEW TRIAL; VACATED IN PART; REMANDED.

Judges McCULLOUGH and CALABRIA concur.