ACCEPTED
12-13-00136-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
1/20/2015 8:20:20 AM
CATHY LUSK
CLERK

No. 12-13-00136-CR

| | | |
|---|---|---|
| ROBERT LYNN PRIDGEN, | § | IN THE TWELFTH COURT |
| | § | |
| | § | |
| Appellant, | § | |
| | § | OF APPEALS |
| vs. | § | |
| | § | |
| THE STATE OF TEXAS | § | TYLER, TEXAS |

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
1/20/2015 8:20:20 AM
CATHY S. LUSK
Clerk

_____

## APPELLANT'S MOTION FOR REHEARING
_____

Respectfully, the Court's decisional analysis falls short in three critical respects:

- It applies a constitutionally deficient standard of review.

- It misapplies the substantive elements of self-defense.

- And it gets the admission-of-evidence analysis wrong.

Any one of these errors should require a rehearing. Together, they simply leave no choice but to rehear the case.

## I. The Court has applied a constitutionally deficient standard of review.

The Court's expression of the no-reasonable doubt standard is correct. But in the context of this case, that serves only as window dressing. While announcing that murder must be proved and self-defense rejected beyond all reasonable doubt – *i.e.*, to a near-certainty – the Court actually has applied a "no evidence" standard, which is prohibited by the Constitution and the U.S.

Supreme Court in criminal cases. In practice, the Court searched only for a scintilla or mere modicum of incriminating evidence and, on finding such proof, called it a day.

This – the Court's application of a constitutionally infirm standard of review – is no mere technicality. The proof here misses the required mark (*i.e.*, the no-reasonable-doubt standard) so widely that we can negate the State's necessary showing by considering a single fact: Rohne was found clutching a knife.

The scientific proof about the knife – the only probative evidence respecting the knife – was that it was equally probable that Rohne wielded the knife as that he didn't. *See* RR12:224 (Pathologist "I wouldn't even speculate."). The responding officers' comments (about a so-called death grip, etc.) were pure surmise, eliminated as nonsense by the pathologist. RR12:224. Those comments thus are non-probative under established evidentiary principles precluding bald speculation.

If Rohne held a knife, the case for murder crumbles, regardless how the Court might analyze the other facts. The knife's presence in Rohne's hand looms too large. The State has not even suggested that murder could be sustained if Rohne wielded the knife. The remaining items of the State's "evidence" (such as the lack of signs of a struggle) either are so flimsy as to be either utterly incapable of sustaining any inference in the State's favor or, in

2

the case of the few items that will sustain some sort of favorable inference, will sustain only the weakest sort of inference. *See infra.* In these circumstances, the unresolvable uncertainty surrounding the knife simply swamps any possibility that the State's case eliminated the reasonable doubt against murder. The abject uncertainty about Rhone's use of the knife means the case for murder can really be no more probable than the case for self defense. No *rational* jury apprised by the pathologist of the probabilities respecting Rohne's use of the knife could find murder *beyond all reasonable doubt*.

## A. The Court's favored items of proof did not come close to eliminating reasonable doubt.

The Court listed nine items of evidence that "permit[ed] a rational jury to conclude that deadly force was not immediately necessary," slip op. at 8:

1. Bruises on Rohne
2. Lack of signs of struggle
3. Rhone and Pridgen were intoxicated
4. 911 call
5. Absence of prior confrontations
6. Rohne's mellow demeanor
7. Weapon discharged at elevated position
8. Rohne's position on loveseat with ankles crossed
9. Pridgen's testimony he thought only of Rohne and the knife

While an appellate court must presume that the trier of fact resolved any conflicting inferences in favor of the prosecution, *Jackson*, 443 U.S. at 326, it isn't within the jury's province to speculate its way into a criminal

3

conviction. Neither the Constitution nor the Supreme Court endorses such methods. And yet any attempt to rationalize a murder verdict in this case hinges on speculation that the knife was planted – by the same drunk who made the bizarre 911 call the Court quotes.

Worse, what this Court sees as conflicting inferences in the evidence are not conflicting at all. Most of the items the Court cites just are not probative and thus are incapable of sustaining any inference of murder. And not one of these nine items *rationally* contradicts self-defense.

| Evidence | Supposition | Rational Test |
|---|---|---|
| *Non-Probative Evidence Equally Consistent with Murder or Self-Defense, and Therefore Incapable of Supporting Reasonable Inference of Murder* | | |
| Bruises on Rohne | That Pridgen assaulted him | • Contradicted by science. The pathologist rejected the bruises as proof of Pridgen assault. RR12:216.<br><br>• The pathologist said the bruises could have existed for minutes or hours before the shot. RR12:215-16.<br><br>• Rohne was tall, heavy, and .33 alcohol drunk. More logical he stumbled and hit the floor or cabinet.<br><br>• Pridgen had no bruises himself. It is implausible that the smaller, weaker, sicker man inflicted bruises on the larger, stronger, younger man. |

| Evidence | Supposition | Rational Test |
|---|---|---|
| Lack of signs of struggle | That Pridgen assaulted him | • The logical conclusion is that Pridgen did not strike Rohne, there was no struggle and Rohne attempted to seduce Pridgen.<br><br>• The Court ignored the officer's testimony that a man with a knife could stab a victim quickly unless victim acted fast. RR13:50-51. |
| Rhone and Pridgen were intoxicated | In a stupor, Pridgen decided to murder his friend | • Why would Pridgen, in his own home, shoot a long time friend paying him rent, drunk or not?<br><br>• The logical conclusion is that something unexpected occurred, increasing the vital need for Rohne's photos to explain why. |
| 911 Call | Pridgen's callousness shows lack of remorse | • The 911 call is a neutral event. Pridgen was drunk and in shock, equally logical whether a murder or self-defense.<br><br>• Really, that he called 911 logically tilts toward self-defense because (1) he did not flee, (2) reconstruct the scene, (3) hide or rearrange the body, or (4) plant a gun. |
| Absence of prior confrontations | That Rohne did not pull knife | • Proof that something astonishing must have occurred to justify a shooting.<br><br>• Additional reason why photos were vital to show why **Rohne** acted. |

| *Probative, Albeit Weak, Evidence Such That a Rational Jury* | | |
|---|---|---|
| *Could Infer Murder, Although the Jury Need Not* | | |
| Rohne's position on loveseat with ankles crossed | That Rohne was sitting when shot | • By science. Pathologist confirmed that if Rohne was attempting to stand with a knife, and was shot by a shorter man, gravity and the blast could have pushed Rohne back down into the seat, RR12:239-40, precisely what Pridgen said occurred, RR14:95-96, 119, 121-22.<br><br>• Police officer agreed. RR12:189.<br><br>• Pathologist explained alcohol's destruction of fine motor skills and the ability to walk. RR12:223; *also* officer: 12:180-81. That Rohne stumbled, tripped or crossed his feet is predictable. |
| Pridgen's testimony he thought only of Rohne and the knife, not rape | That Pridgen shot Rohne only because he had a large knife, not for fear of rape | • The knife *alone* was sufficient to shoot Rohne.<br><br>• Further reason for the photos. Pridgen did not know at the time of Rohne's secret desires. He did know his larger, younger stronger friend had a knife and was reaching for him. He did not know why. But now we do. |
| Weapon discharged at elevated position | That Pridgen was standing while Rohne was sitting | • Pridgen, who admitted standing, never contended that Rohne was fully standing when shot. Rohne was *rising with knife*, consistent with self-defense.<br><br>• The knife is the *reason* for self-defense. |

| Rohne's mellow demeanor | That Rohne did not pull knife on Pridgen or seek to rape | • Again, the Court ignored the knife. What is this mellow man doing with a 16-ounce knife? And mellow people kill every day.<br><br>• The government's assertion of Rohne's phlegmatic personality is further reason why jurors needed to see his photos. |
| --- | --- | --- |

Even if these items could establish a modicum of proof that, taken in hindsight, deadly force was not necessary, there is nothing approaching proof *beyond a reasonable doubt* that Pridgen did not in fact reasonably believe such force was necessary *when he pulled the trigger*.

Here, it bears restating: Pridgen's reasonable belief that force was necessary can't be disproved beyond all reasonable doubt *if there was a knife*. The only credible evidence respecting the knife (and thus the only proof the jury could credit in its deliberation) shows the presence of a knife was equally probable with its absence. And this means no rational fact-finder could conclude that murder was proved beyond all reasonable doubt, even upon considering every other fact but the knife in the light most favoring the State.

**B.    The Court's analysis ignores undisputed facts inconsistent with murder.**

This Court ignored the following seven items of incontestable fact:

| Evidence | Proof of Self-Defense |
|---|---|
| The knife | • Officers testified the one-pound knife is a deadly weapon. RR13:42.<br><br>• Only 2 possibilities exist, *and they are <u>equally probable</u>*: (1) Pridgen planted the knife, for which no proof exists, or (2) Rohne had the knife, and Pridgen had the right to shoot him. |
| Pridgen's home | • The shooting was not in a honky-tonk. It was inside Pridgen's *home*, where he had every entitlement to self-protection.<br><br>• Logically, it is implausible he would plot murder in his home, without any motive, but highly likely he would defend himself given a knife threat. |
| The difference in size, age and condition of the two men | • Pridgen was 55, shorter (5' 8"), and suffering from chronic obstructive pulmonary disease, RR14:38.<br><br>• Rohne was *15 years younger*, *8 inches taller*, and *90 lbs heavier*. SX53, 63; RR14:38, 50.<br><br>• It is impossible that Pridgen inflicted bruises on Rohne while receiving none, without disturbing the room.<br><br>• But it does explain why Rohne selected Pridgen as a victim. |
| Pridgen's prison guard training | • Police verified that officers are trained to fire center of the chest of knife attacker within 21 feet (now 27-feet) because attacker at close range can stab faster than officer can fire. RR13:43-44, 46-47, 50-51;12:191-92. Pridgen, a former prison guard, is similarly trained and acted instantly to the threat, firing center mass. His instinctive reaction to fire tends to support that he faced a real threat by a knife. |

| Evidence | Proof of Self-Defense |
|---|---|
| Officer's testimony that shooting in response to knife wielder within 21 feet is appropriate self-defense | • The government supplied a officer *as an uncontroverted expert* who confirmed shooting under these circumstances is self-defense. RR13:46-47; 50-51. No reasonable juror can set aside that testimony without reason, and none exists. |
| Rohne changed to shorts which he unfastened | • Proof of his intent.<br><br>• Further demonstration of Pridgen's need for the photos to show why. |
| The government's weak attempt at motive – to expel a renter | • In the absence of the photos, it is impossible for any rational person to believe a homeowner killed an easily evicted month-to-month tenant.<br><br>• With the photos, it is rational to believe a homeowner would shoot a larger, younger man attempting actual or simulated rape. |

This Court *must* consider these facts if it is going to conduct a sufficiency review consistent with the beyond-a-reasonable-doubt standard. The Court's refusal to consider them proves the Court applied a "scintilla" or "mere modicum" test: having found 9 items it believes supply a modicum of guilt evidence, the Court saw no point in examining any other record facts, no matter how strongly they might point away from murder. Such analysis is constitutionally wrong. "A 'mere modicum' of incriminating evidence cannot '*by itself* rationally support a conviction beyond a reasonable doubt.'" *Jackson,* 443 U.S. at 320 (citation omitted) (emphasis added); *accord Brooks v. State,* 323 S.W.3d 893, 916 & n.20 (Tex. 2010) (Cochran, J., concurring) (Agreeing because, "Under a 'no evidence' standard, a reviewing court would affirm the

judgment if *any* evidence supported the conviction.") (emphasis added) (Precisely what this Court did).

The Court's limited review of cherry-picked evidence, the kind of 'no-evidence' review afforded in civil cases, is precisely barred in this criminal suit. "[A] person accused of a crime . . . would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence *as would suffice in a civil case.*" *In re Winship*, 397 U.S. 358, 363 (1970) (citation omitted) (emphasis added).

### C. The murder verdict cannot withstand a proper evidentiary review.

Application of the correct beyond-reasonable-doubt standard in Pridgen's case is not a rhetorical exercise: he will win his freedom if the Court rigorously applies the standard. In *Jackson* the Supreme Court upended decades of case law to impose the beyond a reasonable doubt safeguard for a clear imperative: to protect innocent people like Pridgen from conviction. As that court explained, the reasonable-doubt standard "is a prime instrument for reducing the risk of convictions resting on factual error" and "provides concrete substance for the presumption of innocence [which] . . . lies at the foundation of the administration of our criminal law.'" *In re Winship*, 397 U.S. 358, 363 (1970) (citation omitted); *Jackson v. Virginia*, 443 U.S. at 315.

Pridgen should be acquitted on this record. And if a Texas jury had seen Rohne's photographs, Pridgen would have walked from the courtroom.

## II. The Court has not applied the correct substantive law of self defense.

When it comes to the matter of self-defense, the Court hasn't even gotten the substantive elements right. The nub of the Court's analysis, on page eight of its slip opinion, is that certain items of cherry-picked proof "permit[] a rational jury to conclude that deadly force was not immediately necessary to protect Appellant from Rohne's alleged use or attempted use of unlawful deadly force." Slip op. at 8. Respectfully, the question, as concerns self-defense, is not whether a jury could in hindsight conclude that deadly force was unnecessary, as the Court says. *Id.* It is instead whether a jury rationally could conclude that *Pridgen* – clearly drunk and reacting in real time – *could not* have formed a *reasonable belief* that deadly force was necessary, *see* TEX. PENAL CODE ANN. § 9.32, and, further, could conclude that this conclusion was established *so soundly* as to exist beyond any reasonable doubt, to the point of near certainty. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("[B]y impressing upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused, the standard symbolizes the significance that our society attaches to the criminal sanction").

11

The question, as respects self defense under Penal Code Section 9.32, is what Pridgen himself, *in the critical instant* and faced with the particular circumstances, might reasonably have believed, when he pulled the trigger. TEX. PENAL CODE ANN. §9.32(a). This statute imposes a clearly subjective standard for self defense under which deadly force is justified "when and to the degree the actor *reasonably believes* the deadly force is immediately necessary . . . to prevent the other's use or attempted use of unlawful deadly force" or "to prevent the other's imminent commission of . . . murder, sexual assault, [or] aggravated sexual assault . . ."). *Id.* Under this statute, the Court's substitute analysis – which asks whether a detached observer, in the calm and clarity of hindsight, could "conclude that deadly force [in fact] was not immediately necessary," slip op. at 8, is utterly beside the point. And, as stated, for the jury to have validly rejected self-defense the State's proof must have gone far, far beyond merely "permit[ting] a rational jury to conclude" that Pridgen lacked the necessary belief. Rather, that proof must have been *so strong* that a jury rationally could say it *eradicated* any reasonable doubt at all as to whether Pridgen, already drunk and suddenly confronted, could have reasonably believed his use of force was necessary *when he fired*.

12

III. **This Court's dismissal of Rohne's photographs conflicts with a proper relevance analysis.**

> "A defendant has a fundamental right to present evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule."
>
> *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001)

This Court rejected all the photographs taken by Rohne of himself and offered by Pridgen to prove his statutory defense, solely on relevance grounds. Respectfully, that evidence is relevant under Rules 401 and 402 and thus constitutionally admissible because it is (1) material and (2) probative toward a statutorily authorized defense.

Evidence in a criminal trial is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. CR. EVID. 401. "All relevant evidence is admissible, except as otherwise provided by . . . these rules . . . . Evidence which is not relevant is inadmissible." TEX. R. CR. EVID. 402.

A. *The photos are material to Pridgen's statutorily authorized defense.*

> "The photographs, I'll concede, there are some images of sexual violence. We are dealing with bondage and S&M nature, where people are in a superior position and an inferior position, where someone was being sometimes violently abused, and someone was receiving that violent abuse."
>
> --- Prosecutor, RR2:11-12.

13

For evidence to be material it "must be shown to be addressed to the proof of a material proposition, *i.e.,* 'any fact that is of consequence to the determination of the action.'" *Miller*, 36 S.W.3d at 507. The photos of Rohne role-playing sexual fantasies directly addressed the statutory defense jurors were charged to decide: "[a] person is justified in using deadly force . . . to prevent the other's imminent . . . sexual assault or aggravated sexual assault." Jury Charge, CR152-53. The government conceded the violent relevance at trial. RR2:11-12. The photos counter the government's contention that Pridgen fired to evict a tenant, and to answer the prosecutor's rhetorical question to jurors: "And who knows what went on that night?" RR15:62-63. The State's counter arguments alone can make evidence Rule 401 relevant. *See Cooper v. State*, 95 S.W.3d 488, 491 (Tex. App. --- Houston [1st Dist.] 2002, no pet.). And, of course, the photos are vitally necessary to rebut the government's cries that Pridgen planted the knife.

### B. The photos are probative of self-defense.

To be probative, "the proffered evidence must tend to make the existence of the fact 'more or less probable than it would be without the evidence.'" *Miller*, 36 S.W.3d at 507. So what facts are made more or less probable by the photos?

- That the lack of signs of struggle verify Rohne's attempt to seduce or rape Pridgen.

- That Rohne in fact had a knife.

- That Rohne in fact grabbed Pridgen's genitals.

- That despite his otherwise mellow disposition, Rohne was capable of and possessed intent to commit sexual assault.

- That Rohne in fact whispered ""Don't get up. Just relax and enjoy the pleasure."

- That Rohne in fact picked up a large knife to enforce his lust.

- That Rohne intended or simulated rape, or alternatively violence, with one man as submissive, the other dominant.

- That Rohne's bruises, whatever their source, had nothing to do with his advances on Pridgen or were self-inflicted using his sex toys (recall his chains and clamps).

- That Rohne and Pridgen's lack of prior confrontation is consistent *and explained* with the secret and threatening activities Rohne knew of *but Pridgen did not*.

### C. The photographs speak loudly for themselves and 12 citizen jurors should be permitted to listen.

This Court's frankly astonishing assertion that, "There are no images contained in Defense exhibits 1 through 27 that show Rohne acting as an aggressor or engaging in homosexual conduct," slip op. at 10, cannot be reconciled with the images. First, whether Rohne is homosexual is beside the point. Is this Court declaring that for one man to rape another, he must first be proved to be homosexual? Who is to say that Rohne did not see this encounter with Pridgen as a fresh opportunity to branch out from female

prostitutes to male participants? What rational distinction can (or should) be made between simulated violence against women and men, censuring the one, and sanctioning the other?

Remarkably, this Court has erected an artificial barrier to sexual assault evidence: the evidence must be of a *homosexual* nature when the victim and perpetrator are of the same gender. This is not only wrong, but is a violation of the Equal Protection Clause of the Fourteenth Amendment. *See Craig v. Boren,* 429 U.S. 190 (1976).

Second, as the government conceded, RR12:11-12, the photos do show Rohne as an aggressor:

- 7 photos following page 28 of Pridgen's brief show Rohne inflicted pain on himself with a genital clamp (proof his bruises may be self-inflicted);

- 2 photos following page 29, and 1 following page 28, show that Rohne not only hired prostitutes, but supplied (or rented) restraint devices to simulate bondage and pain. Is payment to women to role-play in this manner not an aggressive act?

- The photos following pages 31 (DX7) and 32 (DX12) display rope, penis clamps, handcuffs and chains --- designed to inflict pain and recognized as deadly weapons --- similar to a knife. *See Hill v. State*, 913 S.W.2d 581, 583 (Tex. Crim. App. 1996) (chain is deadly weapon); *Castro v. State,* 2006 Tex. App. LEXIS 704, 7 (Tex. App. --- Houston [1st Dist.] Jan. 26, 2006, no pet.) (rope is deadly weapon); *Smith v. State*, 186 N.C. App. 57 (N.C. App. 2007) (handcuffs as deadly weapon). Rohne simply kept the knife elsewhere in the house.

***D. The Court arrogated an impermissible fact-weighing and credibility assessment --- a role assigned to Pridgen's jurors.***

The Court wrote, "Appellant testified that he shot Rohne because he — 'was in fear of his life and thought Rhone was going to kill him.' But as the sole judge of witness credibility and the weight to be given their testimony, the jury was free to disbelieve Appellant's contention that he feared for his life." Slip op. at 8.

We heartily agree. The problem is that this Court is withholding from the jurors an entire class of evidence necessary for them to decide whether Pridgen in fact "feared for his life." Why did Rohne sit next to him on a loveseat with shorts unfastened? Did Rhone in fact reach for his genitals? Did Rhone in fact whisper in his ear? The photos were critical to that "witness credibility" and "weight" determination assessment.

Respectfully, and counter to this Court's conservative credentials, this Court has decided to act as a thirteenth juror and decide the fact question itself, and this is wrong. *Brooks*, 323 S.W.3d at 911; *see also Eaves v. State,* 141 S.W.3d 686, 693-94 (Tex. App. -- Texarkana 2004, pet. ref'd) ("The court's reasoning does not go to the admissibility of the evidence, but to its believability, or the weight that jurors might place on such testimony. That is a call to be made not by the trial court, but by the fact-finder."); *accord United States v. McClure,* 546 F.2d 670, 673 (5th Cir. 1977) ("a jury could not

17

properly convict him absent the opportunity to hear the proffered testimony bearing upon the theory of defense and weigh its credibility along with the other evidence in the case."); *Miller v. State*, 36 S.W.3d 503, 508 (Tex. Crim. App. 2001) ("A rational jury could find that this evidence helps to prove that appellant was under a constant state of duress from Magee when she delivered the cocaine, that this duress caused her to fear for her safety, and that her fear was reasonable.").

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky,* 476 U.S. 683, 690 (1986). As the Court of Criminal Appeals explained in *Miller*, exclusions of evidence under Rules 401 and 402 implicate the Due Process and Confrontation Clauses of the Sixth and Fourteenth Amendments. *See Miller*, 36 S.W.3d at 506 (these rights "basic in our system of jurisprudence"). By dismissing the photographs of Rohne on mere relevance grounds and refusing retrial, this Court has violated Pridgen's right to present a complete defense, in contravention of *Holmes v. South Carolina,* 547 U.S. 319 (2006), and the Due Process and Confrontation Clauses of the Sixth and Fourteenth Amendments. *See California v. Trombetta*, 467 U.S. 479, 485 (1984); *Washington v. Texas*, 388 U.S. 14 (1967) (right to present complete defense that another committed the crime violated); *Chambers v. Mississippi*, 410 U.S. 284, 302-303 (1973) (same). "The Constitutional right of confrontation is

violated when appropriate cross-examination is limited." *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996); *accord Evans v. State*, 519 S.W.2d 868, 873 (Tex. Crim. App. 1975) (defendants were denied effective cross-examination when prohibited from cross-examining a state's witness about pending charge).

## CONCLUSION

A citizen with no criminal record, former prison official, shot a transsexual who pulled a knife on him in his own home with plans for simulated or actual rape. Every rational Texan would say this is fair reason for self-defense. When jurors see the photos they will acquit Pridgen. This Court --- which asserts its conservative credentials --- should not stand in the way of the most important right we have, to have accusations decided by a jury of peers with full presentation of evidence. The Court should acquit or remand for trial.

Respectfully submitted this 20 of January 2015,

*/s/ James W. Volberding*

By: _____
**JAMES W. VOLBERDING**
SBN: 00786313

100 E. Ferguson Street
Suite 500
Tyler, Texas 75702
(903) 597-6622
(866) 398-6883 (Fax)
*e-mail: jamesvolberding@gmail.com*

19

Attorney for Appellant,
Mr. Robert Lynn Pridgen

## CERTIFICATE OF COMPLIANCE

I certify that this document is written in 13-point font and contains 4,083 words, as measured from the first sentence of the motion through the Conclusion.

*/s/ James W. Volberding*

_____
James W. Volberding

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this pleading has been delivered this 20 day of January 2015 to:

Anderson Co. District Attorney
Courthouse
500 North Church Street
Palestine, TX 75801

by the following means:

| | |
|---|---|
| _____ | By U.S. Postal Service Certified Mail, R.R.R. |
| _____ | By First Class U.S. Mail |
| _____ | By Special Courier _____ |
| _____ | By Hand Delivery |
| __X__ | By Fax before 5 p.m. to (903) 723-7818 |
| _____ | By Fax after 5 p.m. |
| _____ | By email.       */s/ James W. Volberding* |

_____
JAMES W. VOLBERDING