An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1174

Filed: 5 May 2015

Durham County, No. 11 CRS 52203

STATE OF NORTH CAROLINA

v.

JOSE ANDRES AMADOR GOMEZ

Appeal by Defendant from judgments entered 21 May 2014 by Judge Howard E. Manning, Jr., in Durham County Superior Court.  Heard in the Court of Appeals 4 March 2015.

> *Attorney General Roy Cooper, by Assistant Attorney General Thomas H. Moore, for the State.*
>
> *Paul F. Herzog for Defendant.*

STEPHENS, Judge.


*Evidence and Procedural History*

Defendant Jose Andres Amador Gomez appeals from the judgments entered upon his convictions on two counts each of assault with a deadly weapon with intent to kill inflicting serious injury and discharging a firearm into an occupied dwelling

inflicting serious bodily injury.  The charges arose from a shooting which occurred on 26 December 2010 at a Durham apartment complex.  The evidence at trial tended to show the following:  Late on the night of 25 December 2010, Defendant's former girlfriend, Sindi Paola Florinda Benegas Zavala,[1] was at a nightclub in Durham with one of her roommates, Fatima Jose Molina Sanchez.[2]  Defendant, who had been drinking, was also at the nightclub.  Zavala testified that Defendant was "bothering" her and trying to keep her from dancing with other people.  A security guard noticed what was happening and asked Defendant to leave.  Defendant complied, but, when Zavala arrived at her apartment complex with a male friend in the early morning hours of 26 December, Defendant and another man were waiting in the parking lot.  Defendant and Zavala argued, and when Defendant refused to leave, Zavala called the police.  Officer Rachel Campbell Hinton of the Durham Police Department ("DPD") arrived at the apartment complex at about 3:00 a.m.  Officer Hinton observed a group of people, which included Zavala and Defendant, arguing in Spanish.  After Defendant left the complex in a car and Zavala went into her apartment, Officer Hinton also departed.

---

[1] This opinion reflects the name under which this witness was sworn at trial.  However, the State and other witnesses referred to her as "Paola Benegas."

[2] Again, this opinion reflects the name under which this witness was sworn at trial, although the State and other witnesses referred to her as "Fatima Molina."

Shortly thereafter, Sanchez, her boyfriend, Zavala's other roommate Edgar Gutierrez, several of Gutierrez's friends, and Zavala were all inside the apartment when they heard someone knocking on the door and asking to be let inside. Zavala, Sanchez, and Gutierrez all recognized Defendant's voice. In response to Defendant's questions, Gutierrez and Sanchez identified all of the occupants of the apartment, but refused to allow Defendant inside. Sanchez also went out onto a bedroom balcony and saw Defendant standing near the apartment door. Eventually Defendant announced that he was leaving, but Zavala and Sanchez both heard Defendant threaten to "come [back] and kill you all."

About ten or fifteen minutes later, at least five gunshots were fired into the apartment. Gutierrez, sitting in his bedroom with friends, was shot in the right buttock. He required surgery on his stomach, bladder, and kidney, and wore a colostomy bag for a year. Sanchez was shot in the left leg. She was treated at Duke University Medical Center and released later that day, although she retained bullet fragments in her leg.

Because Zavala did not know Defendant's real last name, DPD officers were not able to positively identify him and obtain a warrant until March 2011. Defendant was eventually apprehended in early 2013.

Defendant presented no evidence. At the close of all evidence, Defendant moved to dismiss all charges, and the trial court denied that motion. After the jury

returned guilty verdicts on all charges, Defendant renewed his motion to dismiss. The trial court again denied the motion and sentenced Defendant to three consecutive active prison terms totaling 189 to 255 months. Defendant gave notice of appeal in open court.

*Discussion*

Defendant's sole argument on appeal is that the trial court erred in denying his motions to dismiss all of the charges against him because the State's evidence does not permit a reasonable inference that Defendant was the person who fired a gun into Zavala's apartment. We disagree.

We review "the trial court's denial of a motion to dismiss *de novo.*" *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "'Upon [the] defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense. If so, the motion is properly denied.'" *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (citation and internal quotation marks omitted), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smith*, 186 N.C. App. at 62, 650 S.E.2d at 33 (citation and internal quotation marks omitted). "In making its determination, the trial court must consider all evidence admitted,

whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

"If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed." *Fritsch*, 351 N.C. at 378, 526 S.E.2d at 455 (citation and internal quotation marks omitted). However,

> [c]ircumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of [the] defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of [the] defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.

*Id.* at 379, 526 S.E.2d at 455 (citations, internal quotation marks, and emphasis omitted).

Here, Defendant does not argue that the State failed to present substantial evidence of each essential element of the offenses charged. Rather, Defendant contends only that the State's evidence that *he* was the perpetrator of the crimes was insufficient. As Defendant concedes, the evidence at trial tended to show that he: (1)

was jealous of Zavala dancing with other men at the nightclub on the morning of the shooting, (2) confronted Zavala when she returned home from the nightclub and argued with her in the apartment complex parking lot, (3) tried to gain admittance to Zavala's apartment, and (4) threatened to "come [back] and kill you all" when he was refused entry. Defendant also concedes that "someone fired into the apartment" ten to fifteen minutes after Defendant issued his threat. Defendant contends this evidence is "entirely circumstantial[] and raise[d] only a strong suspicion of his guilt." As noted *supra*, circumstantial evidence like that here is entirely sufficient to support submission of a case to the jury so long as "a reasonable inference of [the] defendant's guilt may be drawn from the circumstances[.]" *Id.* (citation omitted). We conclude that the circumstances in this case certainly permit a reasonable inference that Defendant was the person who fired a gun into Zavala's apartment.

A careful reading of Defendant's brief suggests that his true argument is that the evidence did not prove beyond a reasonable doubt that he was the perpetrator. For example, Defendant emphasizes that the evidence is insufficient because, *inter alia*, no one actually saw Defendant fire a gun into his ex-girlfriend's apartment, Defendant did not flee the Durham area, and Defendant did not have a weapon when he was eventually arrested by the DPD some three years after the shooting. Defendant also implies that the man who was with him in the parking lot when he confronted Zavala could have been the shooter. While Defendant is correct that the

evidence does not remove all doubt about his identity as the shooter, "circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence[.]" *Id.* (citation and internal quotation marks omitted). Because the evidence presented at trial, taken in the light most favorable to the State, was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion [that Defendant was the perpetrator of the offenses charged]," *see Smith*, 186 N.C. App. at 62, 650 S.E.2d at 33 (citation and internal quotation marks omitted), the trial court did not err in denying Defendant's motion to dismiss and in submitting the charges to the jury.

NO ERROR.

Judges HUNTER, JR., and TYSON concur.

Report per Rule 30(e).