IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-812

Filed 07 March 2023

Alamance County, Nos. 18CRS54798-801 19CRS873

STATE OF NORTH CAROLINA

v.

JASON DEON NORMAN

Appeal by defendant from judgment entered 9 February 2022 by Judge D. Thomas Lambeth, Jr. in Alamance County Superior Court. Heard in the Court of Appeals 21 February 2023.

*Attorney General Joshua H. Stein, by Assistant Attorney General Narcisa Woods, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellant Defender Jillian C. Franke, for the defendant-appellant.*

TYSON, Judge.

Jason Norman ("Defendant") appeals from a judgment entered upon a jury's verdict finding him guilty of human trafficking and sexual servitude regarding Defendant's ex-wife, Connie. Our review shows no error.

## I. Background

Defendant was a truck driver at the time of the alleged offenses. Defendant met Alicia in late 2015, and began dating her shortly thereafter (pseudonym used to protect the identity of the victims). Defendant pursued Alicia, by buying her gifts

and taking her on dates.

Prior to meeting Defendant, Alicia had prostituted herself occasionally on the streets. She also used crack cocaine. Alicia began buying crack cocaine and heroin through and from Defendant. She started regularly working as a prostitute from the Red Carpet Inn rooms Defendant had paid for. Alicia engaged in prostitution to secure money to pay Defendant for the rooms and drugs. Defendant did not allow Alicia to buy drugs from anyone else.

Alicia initially only prostituted herself enough to pay back Defendant for the rooms and drugs. As time passed, Alicia felt Defendant pimped her to engage in more prostitution. Alicia would typically give leftover money from prostitution to Defendant after paying Defendant for the rooms and drugs. To find customers for sexual services, Alicia posted advertisements on Backpage.com and Craigslist.com.

Initially, Alicia was the only prostitute working with Defendant. The group eventually grew to include eight to twelve women. The women included, among others, Holly, Connie, Kelly, and Hailey. Alicia tried to leave Defendant on multiple occasions after he became abusive towards her.

Connie, Defendant's ex-wife, was Defendant's "do girl." Connie would complete whatever tasks Defendant asked of her, including assisting with posting ads seeking johns for the other girls. Connie would also check behind Alicia to ensure Alicia was posting advertisements and prostituting. Connie was served a subpoena, but she failed to appear at trial to testify.

Holly also met Defendant through a dating relationship but she, like Alicia, eventually began prostituting herself to pay Defendant for hotel rooms and drugs. Holly only reimbursed Defendant enough money to pay him for the hotel rooms and drugs.

Kelly met Defendant one evening while she was prostituting on the street. Defendant engaged her sexual services and paid for the room. After their liaison, Kelly only purchased drugs from Defendant.

Hailey also worked with Defendant, prostituting out of hotel rooms Defendant had procured for her and the others to use. Hailey did not develop a romantic relationship with Defendant, but did engage in sexual relations with him. Like Alicia, Hailey posted ads seeking sexual customers on Backpage.com and Craigslist.com, after she learned how to do so from Defendant and the other women. Hailey also discovered a GPS tracker on her phone Defendant had installed to track her location.

Defendant was "in the process with" all the women and provided money for rooms. Defendant would provide drugs for the women before he left for work, and he expected payment for the drugs and hotel rooms when he returned. The women were not allowed to have anyone else inside the rooms other than paying customers.

Defendant kept track of the debts owed to him through a ledger contained on a computer and notepads. Alicia often carried the notepads and otherwise helped Defendant run his illicit businesses through transporting drugs or money. Eventually, all the women and Defendant were banned from staying at the Red

Carpet Inn. Defendant rented a house for the women to prostitute. Connie lived at the house with Alicia and some of the other women.

On 24 November 2016, the Burlington Police Department responded to a call at a truck stop near Mebane. The call had alleged a sexual assault. At the scene, the officer came into contact with Defendant, Connie, and Darius King. Defendant told the officer Connie had called Defendant while she was engaging in prostitution. During that phone call, Connie told Defendant she had been raped by King.

On 15 January 2017, the Burlington Police Department responded to a call at the Red Carpet Inn regarding a domestic dispute. When the officer arrived, Connie, Defendant, and Alicia were present. Defendant told the officer Connie was his ex-wife and they had been separated for about three years. Defendant also accused Connie of stealing $250 from him the night before.

On 22 January 2017, the Graham Police Department responded to a call reporting solicitation for prostitution at a truck stop. Upon arrival, the officer met with a truck driver who handed the officer a business card he had received from the woman soliciting. The business card advertised for a purported entity called "Fantasy Island", and it contained a phone number and the email address: jdnorman302.wixsite.com/mysite.

The officer called the number on the card and reached Alicia. The officer pretended to be a truck driver and asked Alicia to provide sexual services at the truck stop. Alicia provided pricing and explored the officer's interests. According to the

officer, Alicia's word choices and her descriptions of acts are not used "in anything other than prostitution."

Defendant, Alicia, and Connie arrived in the same vehicle at the truck stop. Defendant was driving the vehicle to drop Connie off for the offered "companionship" services. At that point, the officers approached the vehicle. Defendant, Alicia, and Connie denied engaging in prostitution, and told the officers any services were for "companionship."

No charges were brought arising from this incident, but Alicia was taken into custody for an unrelated warrant for failure to appear. Following the incident, a detective in the Special Victims Unit at the Alamance County Sheriff's Office searched online databases and located the self-described "Fantasy Island" at jdnorman302.wixsite.com/mysite.

On 17 March 2017, Alamance County Narcotics Enforcement team members executed a search warrant at Defendant's home. During the search, officers seized ten notepads found throughout the house. One of the notepads had a page with three columns labeled: "plays, debt, and paid." The officer understood the information on the page to document prostitution encounters. Another notebook included a shopping list of "copy keys, condom, lube, eye liner."

Yet another notebook had a list of times, with "Eric times two" and "QV, Jen" written next to the time stamps. The officer knew from investigating human trafficking and prostitution that "QV" normally stands for "quick visits," meaning

fifteen-minute prostitution encounters. One of the notepads contained Connie's name with "1G $20 + $20" beside her name. Based upon his experience, the officer understood the "1G" to represent one gram of whatever substance the individual was selling.

On 15 December 2017, Burlington Police Department responded to a drug complaint at the Red Carpet Inn. When officers arrived, they spoke with Defendant and Hailey. Officers requested to enter the room. Inside of the room, the officers saw a white powdery substance in plain view on the table beside a razor blade, which they believed was used for narcotics based on their training and experience.

Additionally, the officers noticed a notepad that appeared to be a ledger, and which contained names with money amounts next to them. Hailey told the officers she was not a prostitute, but she was a drug user. Hailey denied buying drugs from Defendant. Rather, Hailey described Defendant as a "father figure" and told the officers he had helped to provide for her. With Hailey's consent, Officers searched Hailey's room, where they encountered two male individuals and another female. The officers found items Hailey admitted belonging to her, including Amazon gift cards and what appeared to be yet another notebook containing a ledger.

Additionally, the officers located a small bag of marijuana inside the bathroom and torn corners of plastic baggies, several unused needles, burnt pieces of Chore Boy scrubbers, and a paper bag containing Chore Boy scrubbers. The officers believed all the items were indicative of drug use, based on their training and experience.

Further, the officers found a glass smoking pipe, a metal smoking pipe, a gift card, and several papers with names, monetary amounts, and login information for Gmail, Backpage.com, and Craigslist.com accounts.

The other woman inside the room admitted to engaging in prostitution, but said she worked on her own. She explained Defendant was not her boss or pimp, but he provided the room and drugs. She explained she prostituted herself to pay Defendant back. Both Hailey and the other woman inside her room consented to the officer searching their phones. The officers found text message conversations about prostitution and sexual acts. The officers later discovered an advertisement for prostitution on Craigslist.com for a woman whose advertisement contained an email address, which matched the email contained on papers found inside the room.

On 5 September 2018, the Burlington Police Department Special Victims Unit apprehended Defendant and searched Defendant's car pursuant to a warrant. In the car, the officers found two packages of 40 count lifestyle condoms, one 150 count package of sandwich bags, one container of KY jelly lubricant, and one large box of syringes. Officers also found two ledger notebooks. Defendant voluntarily sat for a recorded interview with two officers after he was seized.

On 29 April 2019, Defendant was indicted for three counts each of human trafficking an adult victim, sexual servitude of an adult victim, and promoting prostitution between 24 November 2016 through 5 September 2018 in case 18 CRS 54798-00. On 7 July 2021, superseding indictments were issued for the same charges.

Additionally, Defendant was charged with promoting prostitution in 18 CRS 54801, as well as human trafficking, sexual servitude, and promoting prostitution in 19 CRS 873. In connection with the investigation, Alicia was also charged with human trafficking, sexual servitude, and promoting prostitution. Alicia pled guilty pursuant to a plea agreement to promoting prostitution and agreed to testify for the State.

A trial was held beginning on 1 February 2022. Prior to deliberations, the court granted Defendant's motion to dismiss one count each of human trafficking and sexual servitude "regarding" or "related to" June, but it denied Defendant's motion to dismiss charges concerning Connie and Holly.

The jury found Defendant guilty of three counts each of human trafficking and sexual servitude, but not guilty of five counts of promoting prostitution. Defendant was sentenced as a prior record level V offender to active terms of incarceration of 130 to 216 months to run consecutively. Defendant entered oral notice of appeal in open court.

## II.    Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2021).

## III.    Substantial Evidence

Defendant argues the trial court erred by denying his motion to dismiss the charges of human trafficking and sexual servitude regarding Connie, Defendant's ex-wife, for insufficient evidence.

## A. Standard of Review

This Court reviews the trial court's denial of a motion to dismiss *de novo. State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "When a defendant moves for dismissal, the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 222 (1994) (citation omitted). "[A]ll evidence is considered in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence." *State v. Fisher*, 228 N.C. App. 463, 471, 745 S.E.2d 894, 900 (2013) (citation omitted).

"Whether the evidence presented at trial is substantial evidence is a question of law for the court." *Id.* (citation omitted). "Substantial evidence is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion." *Id.* "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Scott*, 356 N.C. 591, 597, 573 S.E.2d 866, 869 (2002) (citation omitted).

"[I]t is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty." *State v. Poole*, 24 N.C. App. 381, 384, 210 S.E.2d 529, 530 (1975) (citation omitted). "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *Scott*, 356

N.C. at 596, 573 S.E.2d at 869 (citation omitted).

## B. Analysis

Defendant argues insufficient evidence shows Defendant recruited, provided, or obtained Connie with the intent of holding her in sexual servitude, or that Defendant subjected or maintained her for sexual servitude.  We disagree.

A person is guilty of human trafficking when in "knowingly or in reckless disregard of the consequences of the action [the person] recruits, entices, harbors, transports, provides, or obtains by any means another person with the intent that the other person be held in involuntary servitude or sexual servitude." N.C. Gen. Stat. § 14-43.11 (2021).

A person is guilty of sexual servitude when they "knowingly or in reckless disregard of the consequences of the action [the person] subjects, maintains, or obtains another for the purposes of sexual servitude." N.C. Gen. Stat. § 14-43.13(a) (2021).  "Sexual servitude" includes "[a]ny sexual activity as defined in G.S. 14-190.13 for which anything of value is directly or indirectly given, promised to, or received by any person, which conduct is induced or obtained by coercion or deception." N.C. Gen. Stat. § 14-43.10(a)(5)(a) (2021).  "Coercion" includes "providing a controlled substance as defined by G.S. 90-87 to a person" received by any person, which conduct is induced or obtained by coercion or deception." N.C. Gen. Stat. § 14-43.10(a)(1)(d) (2021).

Viewed in the light most favorable to the State, the evidence tends to show, on at least one occasion, Defendant transported Connie to engage in paid sexual services.

On 22 January 2017, Alicia answered a call requesting sexual services at a truck stop. Defendant argues no evidence connects Defendant with Connie's actions that day, but Defendant *drove* Connie to the truck stop in response to the call for prostitution. Defendant's name appeared in the URL on the business card the caller had used to solicit Connie.

Substantial evidence supports a reasonable inference to find and conclude Defendant was guilty of human trafficking and of sexual servitude of Connie. A jury could reasonably conclude Defendant oversaw, organized, and transported Connie for sexual servitude on 22 January 2017. Defendant's argument is overruled.

Defendant also argues no evidence tended to show Connie engaged in sexual servitude in exchange for something of value from Defendant. On at least one occasion, Connie purchased drugs from Defendant. Additionally, on a separate occasion, officers responded to a domestic dispute between Defendant and Connie at the Red Carpet Inn, where women associated with Defendant provided hired sexual acts. The dispute revolved around money Connie had allegedly stolen and owed Defendant. Defendant told the responding officers she owed him $250. Further, Connie lived with the other women at the Red Carpet Inn and, later, at the house Defendant rented for the rendition of hired sexual acts.

Although no additional testimony tended to show Connie purchased drugs in connection with sexual servitude, the evidence, taken as a whole, shows Defendant provided and sold the other women drugs and coerced or encouraged them to engage

in prostitution to repay Defendant for the drugs and hotel rooms. It was not unreasonable for a jury to find Connie engaged in sexual servitude in exchange for something of value from Defendant when Connie purchased drugs from Defendant on at least one occasion and lived with the other women where Defendant provided accommodations for hired sexual acts. Taken as a whole, a reasonable juror could conclude Defendant coerced Connie into sexual servitude with drugs and accommodations.

Alicia testified and the facts tend to show Connie, like Alicia, was actively involved in Defendant's criminal enterprise of requiring women to trade and engage sexual services to pay for drugs and lodging Defendant provided to keep the women in sexual servitude and making sure the women were posting ads, soliciting, seeking, and getting work to prostitute and performing hired sexual acts. Other evidence, including the various ledgers located during searches tends to show Connie, even though she was Defendant's current or former wife and his "do girl", was also forced to pay for drugs and housing. Alisha was charged as a principal. Connie was not.

While this decision may indicate selectivity or discretion in prosecution, the jury could reasonably conclude Connie was trafficked and held in sexual servitude by Defendant, despite Alicia's testimony and the arguably contradictory evidence. While the jury could reasonably find Connie willingly contributed to, engaged in and did supervisory work in the prostitution operation, they could also find Connie was forced to do so to support her drug habit and housing needs. "Contradictions and

discrepancies do not warrant dismissal of the case but are for the jury to resolve." *Scott*, 356 N.C. at 596, 573 S.E.2d at 869 (citation omitted). As the jury is the finder of facts, Defendant's argument is overruled.

## IV.    Conclusion

The State's evidence, taken as a whole, is sufficient for a reasonable jury to find and conclude Defendant is guilty of sexual servitude and human trafficking of Connie. Connie lived with the other women in the house paid for by Defendant to provide a place and accommodation for prostitution, purchased drugs from Defendant on at least one occasion, and was transported by Defendant to a truck stop to engage in and render hired sexual services.

Defendant's argument regarding sentencing upon remand are moot. Defendant received a fair trial, free from prejudicial errors he preserved and argued. We find no error in the jury's verdicts or in the judgment entered thereon. *It is so ordered.*

NO ERROR.

Chief Judge STROUD and Judge ARROWOOD concur.