IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-949

Filed 4 June 2024

Iredell County, No. 19 CRS 54777

STATE OF NORTH CAROLINA

       v.

MATTHEW THOMAS PRIMM

Appeal by defendant from judgment entered 20 April 2023 by Judge William Anderson Long, Jr. in Iredell County Superior Court. Heard in the Court of Appeals 3 April 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Colleen M. Crowley, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Brandon Mayes, for the Defendant.*

WOOD, Judge.

## I. <u>Factual and Procedural History</u>

On the evening of 2 September 2019, Amy[1] exchanged Snapchat messages with Defendant. She was fourteen years old at the time. Defendant had been to Amy's home because he gave her parents a roofing estimate and performed roofing work. Amy did not recall seeing him at that time because she had remained in her room.

---

[1] A pseudonym is used to protect the identity of the juvenile pursuant to N.C. R. App. P. 42(b).

She did not believe she would recognize him if she saw him. Amy closely resembles her older sister, who was fifteen at the time. Amy testified that Defendant may have mistaken her for her sister during their message exchanges because her sister had shown Defendant where the air conditioner was while he was performing the roofing work. Because Amy was signed into her phone with both her own and her mother's email addresses, all of her mother's contacts automatically downloaded to her phone. Amy would randomly add as many people as she could from her phone's contact list, including Defendant, as contacts on Snapchat.

Amy began communicating with Defendant on Snapchat at approximately midnight. Defendant sent a picture of his face to Amy, but she did not recognize him. However, Defendant stated his name, and his display name on Snapchat was "Matteo," resembling "Matthew," and his username handle was "Primmizel," resembling Primm. Amy realized Defendant may have known who she was because he told her that he knew her mother had a tongue piercing.

The conversation was platonic at first as they asked each other who they were and what they were doing. Defendant asked Amy to send a picture of herself, but she told him she would send a picture of her face after she met him in person. Amy did send Defendant a picture of the top of her hair only and never a picture of her face. Amy told Defendant she took college classes, though she explained that they were dual enrollment courses that she took while still in high school.

Eventually, Defendant mentioned coming to her house, and she thought he was joking at first. Defendant made it clear he was not joking, stating, "Yeah I'll come if you can get out." Amy began to get "creeped out," but she did not tell her parents because she did not want them to get mad. She messaged him, "for what?? [F]or all I know you could come kill me." Defendant messaged, "Hahaha that's pretty paranoid . . . You friended me . . . If you don't wanna come out it's cool." Amy asked him, "but do you really think I can sneak out[?]," and he replied, "Idk [I don't know] can you[?]" Amy also asked him, "why would you drive here just to say hi and bye[?]," and he replied, "To teach you how to suck a dick."

At this point, Amy became afraid, so she went into her parents' bedroom at 1:00 a.m. to tell them what was happening. Her father ("Andrew")[2] had Amy ask Defendant questions to see if what she told him was true. Andrew asked Amy to ask Defendant his name, and he confirmed it was "Matt [P]rimm." Andrew continued to have Amy message Defendant and tried to obtain information so that law enforcement could "catch" him. Amy asked what type of vehicle he was in, and Defendant replied that it was a tan truck. Amy's mother called the police to report the incident. Eventually, Defendant told her he had arrived and was "down the street." Amy messaged Defendant, "and you know I'm 14 so it isn't an issue[?]" because her father wanted Amy to communicate her age to Defendant. Defendant

---

[2] A pseudonym is used for father to protect the identity of the juvenile pursuant to N.C. R. App. P. 42(b).

replied, "Naw," to which Amy responded, "sorry . . . okay." The final message from Defendant asked Amy to send him a selfie.

Because Snapchat automatically deletes messages and pictures, Amy turned on a message-saving feature of the application at approximately the same time that she went into her parents' bedroom. Defendant's and Amy's message exchanges prior to this time were not saved. Amy's family never saw Defendant that night.

At approximately 3:30 a.m., Mooresville Police Officer Wes Bumgardner ("Officer Bumgardner") received a dispatch call placed by Andrew regarding a suspicious person. Andrew explained that Defendant was in the neighborhood trying to pick up his fourteen-year-old daughter. Officer Bumgardner responded to Amy's house and asked Amy and Andrew to provide written statements explaining what had happened. He did not view the Snapchat messages that night but asked Amy's family to screenshot the Snapchat messages and email them to him.

At approximately 3:30 or 4:00 a.m., Mooresville Police Officer Joshua Glenn ("Officer Glenn") received a call from dispatch about a suspicious person as well as a description of the person's vehicle, a tan pickup truck. Officer Glenn drove toward Amy's home looking for the vehicle. On his way there, he noticed a vehicle matching the suspicious person's vehicle description near a Valero gas station. He did not recall whether the vehicle was traveling or parked. He conducted a stop of the vehicle and asked for the driver's license and registration. He processed the driver's information in his patrol vehicle and learned the driver was Defendant, and his license showed a

birthdate in the year 1987. After determining Defendant did not have any pending warrants for his arrest, Officer Glenn released Defendant because he did not have a reason to charge him with a crime. The interaction lasted approximately five to ten minutes.

Once Amy's family emailed screenshots of the Snapchat messages to Officer Bumgardner, he forwarded the email of the screenshots to Detective Bronkie-Knight, an investigator of sexual assault crimes. Detective Bronkie-Knight spoke to an assistant district attorney about the case and learned that the police department could charge Defendant with soliciting a child by computer. On 13 September 2019, Officer Bumgardner obtained an arrest warrant for Defendant charging him with solicitation of a child by computer or certain other electronic devices to commit an unlawful sex act in violation of N.C. Gen. Stat. § 14-202.3(a). It stated he unlawfully told Amy he would teach her "how to suck a dick" and drove to Mooresville to meet her down the street from her house.

Detective Elizabeth Watts ("Detective Watts") replaced Detective Bronkie-Knight as the lead detective in the case after Detective Bronkie-Knight left the police department. Detective Watts became involved with the case for the first time in October 2022. She obtained a search warrant for Defendant's "Primmizel" Snapchat account. Because of the delay in obtaining the search warrant, the only information Snapchat had maintained regarding Defendant's Snapchat account was that it had been deleted on 3 September 2019.

On 8 July 2020, a grand jury indicted Defendant for one count of solicitation of a child by a computer in violation of N.C. Gen. Stat. § 14-202.3(a). Defendant's trial was held 17-20 April 2023. Defendant made motions to dismiss the charge at the close of the State's evidence and at the close of all evidence. The trial court denied both motions. The trial court instructed the jury on both the class G offense and the lesser-included class H offense of solicitation of a child by means of a device capable of electronic data transmission. The offense of solicitation of a child by a computer or other certain electronic devices is punishable as a class G felony if a defendant actually appears at the meeting location. However, if the defendant or other person for whom the defendant arranges the meeting does not actually appear at the meeting location, then the offense is a class H felony. The jury found Defendant guilty of the lesser-included offense. The trial court imposed a sentence of 6-17 months of imprisonment suspended for 36 months of supervised probation. Defendant entered oral notice of appeal in open court, and on 24 April 2023 he filed a written notice of appeal.

## II. <u>Analysis</u>

Defendant argues the trial court erred in denying his motions to dismiss because there was insufficient evidence demonstrating Defendant believed Amy was younger than sixteen years old. Specifically, Defendant argues the evidence demonstrates he believed Amy was a college student and did not know she was

fourteen until Andrew directed her to send him a message stating she was fourteen years old, at which time Defendant began driving away from her location.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). Our Supreme Court has clearly defined the standard of review for a motion to dismiss:

> When considering a motion to dismiss for insufficiency of evidence, the court is concerned only with the legal sufficiency of the evidence to support a verdict, not its weight, which is a matter for the jury. The evidence must be considered in the light most favorable to the state; all contradictions and discrepancies therein must be resolved in the state's favor; and the state must be given the benefit of every reasonable inference to be drawn in its favor from the evidence. There must be substantial evidence of all elements of the crime charged, and that the defendant was the perpetrator of the crime.

*State v. Barnett*, 368 N.C. 710, 713, 782 S.E.2d 885, 888 (2016).

N.C. Gen. Stat. § 14-202.3 defines solicitation of a child by an electronic device as follows:

> A person is guilty of solicitation of a child by a computer if the person is 16 years of age or older and the person knowingly, with the intent to commit an unlawful sex act, entices, advises, coerces, orders, or commands, by means of a computer or any other device capable of electronic data storage or transmission, a child who is less than 16 years of age and at least five years younger than the defendant, *or* a person the defendant *believes* to be a child who is less than 16 years of age and who the defendant believes to be at least five years younger than the defendant, to meet with the defendant or any other person for the purpose of committing an unlawful sex act. Consent is not a defense to a charge under this section.

N.C. Gen. Stat. § 14-202.3(a) (emphasis added).

Here, the trial court instructed the jury on the class H solicitation offense—the lesser-included offense of which the jury found Defendant guilty—in the following manner:

> First, the Defendant *knowingly* with the intent to commit a sex act enticed and advised the person to meet with the Defendant.
>
> Second, that the purpose of the meeting was to commit a sex act. A sex act means oral intercourse done with another human.
>
> Third, that the Defendant enticed and advised the person by means of a device capable of electronic data transmission, i.e. a cell phone, to meet the Defendant.
>
> Fourth, that the Defendant was 16 years of age or older at the time of the offense.
>
> And fifth, that the person enticed and advised by the Defendant was less than 16 years of age and at least 5 years younger than the Defendant.

(Emphasis added). Defendant focuses on the portion of the criminal statute which criminalizes soliciting a child one *believes* to be less than sixteen years old. However, the trial court instructed the jury on the first alternative presented in the statute—that Defendant *knowingly* solicited a child less than sixteen years old. Moreover, the indictment states the offense as Defendant *knowingly* solicited Amy. We address Defendant's motion to dismiss accordingly.

First, circumstantial evidence supports the inference that Defendant knew Amy was less than sixteen years old. Although Amy told Defendant she took college classes, she clarified that they were dual enrollment classes and that she was still in high school. Amy testified Defendant may have confused her with her older sister because she closely resembles her, and her sister had shown Defendant where the air conditioner was while he performed roofing work at their house. However, Amy's older sister was fifteen at the time these events occurred. Therefore, although Amy looked like her older sister, even her older sister was less than sixteen years old at the time. Moreover, Defendant understood that Amy would have to sneak out of her house to meet with him.

Second, direct evidence indicates Defendant was aware of Amy's age. Amy messaged Defendant at her father's request, informing him that she was fourteen years old and asking, "so it isn't an issue[?]" Defendant answered, "Naw." Defendant argues it was at this moment that he decided to abandon his attempt to meet with Amy and began to drive away. Officer Glenn testified that Defendant's vehicle was pointing north on Park Avenue when he stopped him indicating that Defendant's vehicle was pointing away from Amy's home. Andrew testified that the Valero gas station was only a five- to ten-minute walk away from Amy's home. Under the circumstances, Defendant's response could be interpreted in more than one way.

Moreover, Defendant was still within a five- to ten-minute walk of Amy's residence at the time Officer Glenn conducted the stop. The evidence tends to show

Amy had gone into her parents' bedroom at 1:00 a.m., and Officer Glenn did not receive the dispatch call regarding Defendant until approximately 3:30 or 4:00 a.m., indicating Defendant traveled to the vicinity of Amy's home with the intent to meet her to engage in sexual activity even after she informed him she was fourteen years old.

It was the jury's responsibility to determine Defendant's state of mind—specifically, whether he knew Amy was fourteen years old—on 2 September 2019. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980) ("contradictions and discrepancies are for the jury to resolve and do not warrant dismissal"). The jury reasonably could interpret Defendant's reply to Amy, stating "Naw," to mean that the fact she was fourteen was *not* an issue for him. Indeed, in the light most favorable to the State, Defendant's response indicated he did not care that Amy was fourteen and chose to proceed with the plan to meet with her to engage in sexual activity regardless of her age.

In light of the standard of review on a motion to dismiss, that "[t]he evidence must be considered in the light most favorable to the state; all contradictions and discrepancies therein must be resolved in the state's favor; and the state must be given the benefit of every reasonable inference to be drawn in its favor from the evidence," we are satisfied there was substantial evidence from which the jury reasonably inferred Defendant knew Amy was less than sixteen years old and that he still planned to meet with her to engage in sexual activity. *Barnett*, 368 N.C. at

713, 782 S.E.2d at 888.  Accordingly, the trial court did not err in denying Defendant's motions to dismiss.

### III. <u>Conclusion</u>

Substantial evidence was presented to allow the jury to infer Defendant knew Amy was less than sixteen years old while attempting to meet her to engage in sexual activity.  Accordingly, the trial court did not err in denying Defendant's motions to dismiss.

NO ERROR.

Judges ARROWOOD and FLOOD concur.